[767 NYS2d 484]

In the Matter of TIMOTHY PARKHURST, Respondent, v ANGELA McFALL, Respondent. DANIEL J. FITZSIMMONS, as Law Guardian, Appellant. (And Two Other Related Proceedings.)

Third Department, November 26, 2003

### APPEARANCES OF COUNSEL

*Daniel J. Fitzsimmons, Law Guardian*, Watkins Glen, for appellant.

*James Goode*, Elmira, for Angela McFall, respondent.

*Connie Fern Miller*, Watkins Glen, for Timothy Parkhurst, respondent.

### OPINION OF THE COURT

CREW III, J.P.

Petitioner and respondent formerly lived together in Pennsylvania with their biological child, Dakota (born in 1998). Following their separation, respondent relocated to New York with Dakota and her two sons from prior relationships. Several months later, respondent petitioned for custody of Dakota and, by order entered April 13, 2000, Family Court awarded the parties joint legal custody of Dakota, with physical custody to respondent and visitation to petitioner as the parties could agree. No agreement apparently was forthcoming and, in response to petitioner's modification application, Family Court awarded petitioner visitation for three hours each Sunday.

Petitioner subsequently filed a violation petition, prompting Family Court to issue an order entered October 15, 2001 awarding, inter alia, petitioner visitation with Dakota every other weekend from 6:00 P.M. Friday to 6:00 P.M. Sunday and two weeks of visitation during the summer. Visitation difficulties continued with petitioner missing approximately six visits with Dakota due to respondent's failure to produce the child at the appointed time and place. As a result, by order entered September 3, 2002, Family Court awarded petitioner five consecutive days of visitation with the child.

Two additional violation petitions ensued and, in January 2003, petitioner commenced the instant proceedings seeking, inter alia, to modify Family Court's prior custody order and obtain full legal and physical custody of Dakota. Following a hearing, Family Court, citing respondent's interference with

petitioner's visitation and what the court characterized as respondent's unstable lifestyle, awarded the parties joint legal custody of Dakota, with physical custody to petitioner and liberal visitation to respondent. This appeal by the Law Guardian ensued.*

The case law makes clear that where, as here, an established custody arrangement is in place, that arrangement should not be altered absent some indication that a change in custody "will substantially enhance the child's welfare and that the custodial parent is unfit or less fit to continue as such" (*Matter of Kelly v Sanseverino*, 278 AD2d 535, 536 [2000]; *see Matter of Meola v Meola*, 301 AD2d 1020, 1021 [2003]; *Matter of Oddy v Oddy*, 296 AD2d 616, 617 [2002]). This determination, in turn, requires consideration of a number of relevant factors including, inter alia, the quality of the respective home environments, the length of time the existing arrangement has been in place and each parent's past performance, relative fitness and ability to provide for the child's emotional and intellectual development (*see Matter of Crocker v Crocker*, 307 AD2d 402, 402 [2003], *lv denied* 100 NY2d 515 [2003]). In this regard, "it is the function of this Court 'to insure that *all* relevant factors were evaluated by Family Court and that its decision has a sound and substantial basis in the record' " (*Matter of Meola v Meola, supra* at 1021, quoting *Matter of Hudson v Hudson*, 279 AD2d 659, 661 [2001] [emphasis added]).

With these principles in mind, we now turn to the record before us. As noted previously, Family Court's decision to award physical custody to petitioner centered upon respondent's "unstable life" and her interference with petitioner's visitation rights. To be sure, the record reflects that respondent moved a number of times since returning to this state. These moves, however, which apparently did not require respondent's children to change schools, appear to have been occasioned by respondent's lack of gainful employment. At the time of trial in March 2003, respondent was working 32 hours per week at the local Wal-Mart, possessed a validly registered and insured motor vehicle, lived in a two-bedroom apartment and was current on her various financial obligations. Hence, the circumstances giving rise to respondent's once transient lifestyle—her separation from petitioner and her inability to secure long-term employment—had abated by the time of trial.

---

* Enforcement of Family Court's order has been stayed pending the outcome of this appeal.

As for respondent's interference with petitioner's visitation rights, the record plainly indicates that respondent denied petitioner scheduled visitations with Dakota on various occasions, and this Court previously has held that a custodial parent's persistent interference with the noncustodial parent's visitation rights may well render the offending parent unfit (*see Matter of Brodsky v Brodsky*, 267 AD2d 897, 898-899 [1999]). We also have cautioned, however, that "evidence of a parent's *occasional* interference with visitation cannot alone decide a custody dispute[, as] reversal of a custody order should not be a weapon wielded as a means of punishing a recalcitrant parent" (*Matter of Ahmad v Naviwala*, 306 AD2d 588, 591 [2003], *lv dismissed* 100 NY2d 615 [2003] [emphasis in original]). Here, although respondent's denial of visitation goes beyond occasional interference, there is nothing in the record to suggest that she did so in a willful and/or malicious attempt to interfere with petitioner's relationship with Dakota (*see Matter of Carpenter v La May*, 241 AD2d 625, 626 [1997]; *compare Matter of Ahmad v Naviwala, supra*). Indeed, with regard to the visitations missed in January 2003, it appears that there was a genuine misunderstanding as to the weekends that petitioner was supposed to visit with Dakota and that respondent denied such visits after consulting with her attorney. Thus, although we certainly do not condone respondent's actions with regard to scheduled visitations between petitioner and Dakota and are well aware of the time, money and inconvenience that petitioner has had to endure in his commendable efforts to enforce his visitation rights in order to maintain a relationship with his son, we do not believe, based upon consideration of all the relevant factors, that depriving respondent of physical custody of her son is the appropriate remedy for her transgressions in this regard.

By all accounts, the child enjoys a loving relationship with both parents, and there is nothing in the record to suggest that either home environment is not suitable for raising Dakota. Both parents were employed at the time of trial, and petitioner and respondent appear equally capable of providing for their son's emotional and intellectual needs. Additionally, consideration must be given to the fact that Dakota has resided with respondent since birth and enjoys a positive relationship with his stepbrother Derrick, who also resides in respondent's household. Finally, although the record reveals that respondent was the subject of a neglect petition based upon her failure to respond

to concerns regarding Derrick, who ultimately was the subject of a person in need of supervision petition, both petitions were adjourned in contemplation of dismissal, and it appears that respondent and Derrick have been receiving the required services and/or counseling. And, while the neglect petition filed against respondent certainly raises concerns with regard to her ability to be an appropriate custodian for Dakota, so does petitioner's out-of-state misdemeanor sex conviction for fondling a young child.

In short, we simply are not persuaded that respondent is unfit to continue as Dakota's custodial parent and that Dakota's overall well-being would be substantially enhanced by a change in custody. Stated another way, petitioner has failed to demonstrate a sufficient change in circumstances to warrant the relief granted by Family Court. Accordingly, the underlying order is modified with regard to physical placement of the child, and this matter is remitted to Family Court for the fashioning of an appropriate visitation schedule for petitioner. On this point, we urge Family Court to craft a visitation schedule that not only affords petitioner liberal access to Dakota, but also sets forth those periods of visitation in excruciating detail, thereby eliminating the possibility of any future "misunderstandings" on respondent's part as to when petitioner is entitled to be with his child. On this point, respondent would be well advised to scrupulously honor the visitation awarded to petitioner, as any further unwarranted interference on her part should result in contempt proceedings for which incarceration may be appropriate.

Spain, Carpinello, Rose and Kane, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as awarded physical custody of the parties' child to petitioner and awarded visitation to respondent; physical custody of the parties' child is awarded to respondent and matter remitted to the Family Court of Schuyler County for the fashioning of an appropriate visitation schedule for petitioner; and, as so modified, affirmed.