Virgil N.J. v Dianne M. (2006 NY Slip Op 51074(U))

[*1]

Virgil N.J. v Dianne M.

2006 NY Slip Op 51074(U) [12 Misc 3d 1166(A)]

Decided on May 31, 2006

Family Court, Monroe County

Ruhlmann, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 31, 2006

Family Court, Monroe County
VIRGIL N.J., PETITIONER,
against
DIANNE M., RESPONDENT.
XXX

APPEARANCES:
Gould, Peck, Metzler & Cognata, LLP, by Eric J. Metzler, Esq. for Petitioner
Muldoon & Getz, by Kimberly F. Duguay, Esq. for Respondent
Lori Ann Robb, Esq., Law Guardian

Dandrea L. Ruhlmann, J.
This is a custody and visitation case transferred to this Court by order of Kings County Family Court entered on September 15, 2005. Petitioner-Father Virgil N. J. ("Father") seeks a violation and modification of an order dated July 14, 2003 which granted Respondent-Mother Dianne M. ("Mother") custody of the parties' son Justin E. M. (DOB: 8/16/01). Mother cross-petitioned for modification of a temporary order of custody dated June 25, 2005 which granted Father custody of Justin. The Court took five days of testimony, hearing from eight witnesses.
After the close of proof Father moved to reopen, based on new evidence impugning the testimony of both Mother and her aunt concerning the child's potential home environment with Mother. This Court found Father's motion to reopen sufficiently probative of parental fitness to hear new testimony on May 17, 2006 from Father, Mother and Mother's aunt (Cf. In re Juliet M., 16 AD3d 211, 212 [1st Dept 2005]; CPLR 2221[e][2]).
The Court finds that Mother violated the July 14, 2003 order and there has been a change of circumstances since entry of that order. It is in the best interests of Justin that the order be modified granting the parties joint custody of Justin with primary physical residency to Father during the school year and to Mother during the summers, [*2]with such other visitation as can be mutually agreed upon by the parties. Mother's cross-petition is dismissed as moot as this Court's order supplants the temporary order dated June 25, 2005.
A party seeking a modification of an existing custody order must show "a change
of circumstances which reflects a real need for change to ensure the best interests of the child" (Matter of Tyrone W. v Dawn M.P., __ AD2d __, 811 NYS2d 255, 256, {27 AD3d 1147} 2006 NY Slip Op 01998 [4th Dept 2006], quoting Matter of Irwin v Neyland, 213 AD2d 773 [3d Dept 1995]). A custody arrangement should not be altered absent some indication that a change in custody will substantially enhance the child's welfare and that the custodial parent is unfit or less fit to continue as such (Matter of Parkhurst v McFall, 1 AD3d 78, 80 [3d Dept 2003]). This determination, in turn, requires consideration of a number of relevant factors including, inter alia, the continuity and stability of the existing custodial arrangement, the relative fitness of the parents and the length of time the present custodial agreement has continued; the quality of the child's home environment and that of the parent seeking custody; the ability of each parent to provide for the child's emotional, intellectual development and the individual needs of the child; and the financial status and ability of each parent to provide for the child (Fox v Fox, 177 AD2d 209, 210 [4th Dept 1992]; see also Eschbach v Eschbach, 56 NY2d 167, 172-173 [1982]).
After his birth Justin resided with Mother in the Brooklyn, New York home of paternal grandmother Angela J. Father resided with them for approximately one month before relocating to Rochester. Mother's two sisters resided a couple of blocks away in Brooklyn. Around August 2002 when Justin was about one year old, Mother moved into the home of her Aunt Verna Bernard D. located just outside of New York City in Irvington, New Jersey.
For the first two years of Justin life, Respondent-Mother acted as his primary caretaker with the assistance of both maternal relatives and his paternal grandmother.
On or around July 14, 2003 a final Court order provided Mother with sole custody of Justin subject to periods of visitation by Father to occur one week out of every six as well as on alternate holidays, Father's Day and Father's birthday.
It is not controverted that sometime around April 2004 Mother moved to Texas with Justin where maternal grandmother, Mary K., resided. What is disputed is whether Father knew of Mother's plans to move to Texas. Mother testified that she told Father over the 2003 Christmas holiday that her Aunt Verna D. was moving to Florida and that she too was thinking of moving either to Florida or Texas close to Grandmother Kelly. She then went to Kings County Family Court to inquire whether she needed to file a relocation petition but was advised that she did not. Although Father and Mother saw each other again in March 2004, Father testified that Mother never informed him of her impending move.
 Mother testified that when she moved to the Texas home of Grandmother K. she kept the same cellular phone number (including area code), that grandmother's address was listed in the telephone directory and that she contacted Father shortly after her move and offered Father extended summer and school vacation visits with Justin.
To the contrary, Father testified that Mother did not inform him of where she relocated and that he had to hire a private investigator to locate her.
[*3]
Father filed violation and modification petitions in New York during Summer 2004. In Mother's default the Court issued a temporary order of custody to Father on November 22, 2004. Father went to Texas that November and again for the 2005 New Year's holiday to both visit with Justin and to retrieve him. On February 14, 2005 a Texas Court enforced Father's temporary order of custody. Father immediately left Texas with then three and one half year old Justin. Justin has resided with Father in Rochester since that time.
The order was later extended and amended to afford Mother visitation with Justin.
Mother's move to Texas and the resulting time Justin has spent residing with Father constitute a change in circumstances (see Matter of Tyrone W. v Dawn M.P., supra , 811 NYS2d at 256 [Petitioner-father's conceded interference with Respondent-mother's visitation rights was sufficient to establish a change in circumstances]). The custody order dated July 14, 2003 continued without incident until Mother relocated to Texas and it was no longer possible for Father to exercise visitation as ordered by the Court. Mother should not have moved to Texas without Court permission and certainly not without the consent of Father.
While the move constituted a violation of the visitation order, this Court cannot conclude however that such move alone renders Mother unfit or less fit than Father.
 Yet Mother's move to Texas coupled with her less than forthright testimony concerning the home environment presently available to Justin in New Jersey is something this Court cannot ignore (See In re Juliet M., 16 AD3d at 212 [Court correctly found mother not credible when events were known before her testimony]). In combination the Court finds these factors render Mother less fit than Father to act as the parent with primary residence with Justin (see e.g. Matter of Parkhurst v McFall, 1 AD3d 78, 81 [3d Dept 2003]; cf. Entwistle v Entwistle, 61 AD2d 380, 384-385 [2d Dept 1978], lv dismissed 44 NY2d 851 [1978] [a parent's interference with the visitation rights of the other parent is so inconsistent with the children's best interests that it may render the offending parent unfit to act as the custodial parent]).
Unlike in Matter of Parkhurst v McFall (1 AD3d at 81), here, there was evidence to suggest that Mother denied Father visitation in a malicious attempt to interfere with Father's relationship to Justin. Mother moved to Texas without even notifying Father of such move. Father learned of the move only when he attempted to pick up Justin for a scheduled visit and found that Mother and Justin were gone (see Matter of McTighe v Pearl, 8 AD3d 951 [4th Dept 2004], lv dismissed 4 NY3d 739 [2004] [Mother attempted to sabotage the relationship between Father and child ]; see also Matter of Ahmad v Naviwala, 306 AD2d 588, 591 [3d Dept 2003], lv dismissed 100 NY2d 615 [2003] [where respondent-father absconded with the children to Saudi Arabia]). Father testified that when he made contact with Mother and learned of her relocation with Justin to Texas, she attempted to sabotage his relationship with his son, insisting "just forget you had a family, just leave us alone . . . you lost your family now find another one."
While Mother testified that she wants Father and his family to be a part of Justin's life; that she wants negativity and hostility between them to end; that she would be supportive of visitation with Father above and beyond any Court ordered visitation [*4]and that she has permanently relocated to Irvington, New Jersey and will remain there for the duration of Justin's minority, the Court doubts her credibility in light of new evidence raised by Father. After testimony ended, Father brought a motion to reopen after driving by Mother's alleged New Jersey residence and finding a "For Sale" sign on the property. Upon further investigation, Father learned that the New Jersey residence was listed prior to Mother and Aunt D.'s testimony at trial; however, Mother testified that Justin would live with her at that very home for the remainder of his minority. Aunt D. testified that she and her husband would serve as resources for Mother in terms of providing child care while Mother worked and attended school and would also provide for Mother financially if necessary.
By all accounts, Justin enjoys a loving relationship with both parents. While there was no evidence suggesting that either home environment would not be suitable for raising Justin, the Court now does not know what home environment Justin would face if residency was granted to Mother. The initial testimony of Mother and her Aunt D. both accentuated the benefits the current residence in Irvington, New Jersey afford Justin. Located in a suburban neighborhood with a backyard and with Mother and Justin occupying the entire third floor of the house, it allowed for Mother to have extended support from her Aunt and Uncle D. as well as other family members in the New York City area, while providing adequate separate space (see e.g. Matter of Francisco v Francisco, 298 AD2d 925 [4th Dept 2002], lv denied 99 NY2d 504 [2003] [support of extended family members falls in a child's best interests]). Now the Court is left uncertain as to how Mother, a single working woman who also attends school, would care for Justin and whether Justin would be raised in a suitable environment. While Mother and Aunt D. later testified that Aunt D. now has a four bedroom apartment with one room reserved for Mother and Justin until the D.'s family purchases a new home, their own inconsistent earlier testimony renders them incredible. Indeed Aunt D. conceded that maternal Grandmother K. (her own sister) has returned from Texas and is residing with the D. family in the Irvington New Jersey home pending the real estate closing, yet there is no plan as to where the K. family will move thereafter.
Father's residency is more firmly established. Father resides with his fiancee Lisa L. and Justin has been residing with them now for fourteen months. Father works at a bank and Ms. L. is a teacher. Father and Ms. L. recently purchased a home on[ ] in Irondequoit, and plan to wed in July 2006. Justin is currently enrolled in pre-kindergarten and daycare and is progressing well academically and developmentally. Justin receives speech therapy in conjunction with his pre-kindergarten class and will be registered for kindergarten in the fall in the West Irondequoit School District.
The Court cannot ignore that Justin has lived with Father for a total of only 15 months out of his nearly five years of life and that Mother raised Justin on her own without receiving any child support from Father for most of Justin's life. Problematic too is the way Father took three and one half year old Justin so abruptly from his surroundings in Texas - leaving with him directly from the courthouse to the airport. The Court does give some credence to Father's assertion that he felt deprived of contact with Justin and wanted to ensure his son's safe return to New York so he could resume their relationship expediently. Further, Father has proven that in the short 15 [*5]months, Justin has completely adapted to his new life in Rochester and is excelling in his Father's care. The continuity and stability the existing temporary custodial arrangement has afforded Justin, weigh in favor of Father. Indeed at the close of new evidence, the Law Guardian advocated that Justin remain in Rochester with his Father.
Justin benefits from the care of both his Mother and Father and it is in best interests that the parties share joint custody. While Mother and Father have had disagreements in the past, the Court does not find that they are "so embattled and embittered as to effectively preclude joint decision making" (Matter of Schlafer v Schlafer, 6 AD3d 1202, 1202-1203 [4th Dept 2004], quoting Matter of Fedun v Fedun, 227 AD2d 688, 688 [3d Dept 1996]). Rather, it would be best for the parties to put the disagreements behind them and to allow Justin to benefit equally from both their care (see Matter of Marcantonio v Marcantonio, 307 AD2d 740 [4th Dept 2003] [joint custody appropriate where, although parents had difficulty communicating, the children were socially well-adjusted and each party was a loving parent capable of providing a good home]). Mother testified that she wants an amiable relationship with Father and believes such is possible. The Court finds this part of Mother's testimony credible. Mother has been trying at all costs to get Justin back and the Court trusts that she has at last learned that the only way Justin will continue to be a part of her life is if she allows and encourages the relationship between Father and Justin. Father has always abided by the Court orders regarding visitation and appears to be level-headed and aware that Justin's interests now must come first, which will necessarily include communication with Mother. The Court is intent upon maximizing Justin's time with both parents and for this reason believes that a split residency arrangement is in Justin's best interests.
NOW, THEREFORE, it is
ADJUDGED that Respondent Dianne M. violated the Court Order dated July 14, 2003; and it is further
ADJUDGED that there has been a change in circumstances since entry of the
July 14, 2003 order necessitating that the order be modified in the best interests of Justin; and it is further
ORDERED that the parties are granted joint custody of Justin; and it is further
ORDERED that Petitioner Virgil N. J. shall have primary physical residency
of Justin during the school year; and it is further
ORDERED that Respondent Dianne M. shall have primary physical residence
of Justin during the summer recess from school; and it is further
ORDERED that Respondent Dianne M. shall have visitation with Justin at least one weekend per month and during both school spring and winter recesses; and it is further
ORDERED that Petitioner Virgil N. J. and Respondent Dianne M. shall
split time with Justin during the school Christmas/New Year's recess and alternate holidays including; Martin Luther King Day, Memorial Day, July 4th, Labor Day,
Columbus Day, Veterans Day, Thanksgiving Day (and the Friday following),
Christmas Eve/Day, New Year's Eve/Day, and it is further
ORDERED that Respondent Dianne M. shall have additional visitation with Justin [*6]as mutually agreed upon by the parties; and it is further
ORDERED that Petitioner Virgil N. J. and Respondent Dianne M. shall have reasonable daily telephone contact with Justin while in the residency of the other parent; and it is further
ORDERED that Petitioner Virgil N. J. shall have visitation with Justin for one full week during the summer recess; and it is further
ORDERED that Dianne M.'s petition to modify the temporary order of the Court dated June 25, 2005 is dismissed as moot.
Dated this 31st day of May, 2006 at Rochester, New York.
___________________________________
HON. DANDREA L. RUHLMANN
FAMILY COURT JUDGE
PURSUANT TO § 1113 OF THE FAMILY COURT ACT, AN APPEAL MUST BE TAKEN WITHIN THIRTY DAYS OF THE RECEIPT OF THE ORDER BY APPELLANT IN COURT, THIRTY-FIVE DAYS FROM THE MAILING OF THE ORDER TO THE APPELLANT BY THE CLERK OF THE COURT, OR THIRTY DAYS AFTER SERVICE BY A PARTY OR LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.