■ In the Matter of SAMIA N. AHMAD, Appellant, v IQBAL M. NAVIWALA, Respondent. [762 NYS2d 125] —Peters, J. Appeals (1) from an order of the Family Court of Broome County (Ray, J.), entered September 17, 2002, which, inter alia, granted respondent's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children, and (2) from an order of said court, entered September 17, 2002, which appointed F. Daniel Casella as Law Guardian.

The parties, devout Muslims, were married in 1986 and have four children, Maareah (born in October 1988), Asmaa (born in September 1989), Safiyya (born in February 1992) and Osamah (born in August 1994). In August 1997, petitioner and the children went to Saudi Arabia to reside with respondent after he became employed by Saudi Aramco. Seven months later, petitioner and the children returned to the City of Binghamton, Broome County, due to marital strife. By November 1998, petitioner sought a divorce and, in June 1999, she received an order of sole custody with a reservation of rights to respondent due to his default.

After consulting with religious scholars of Islamic law, the

parties, represented by counsel, agreed that petitioner would maintain sole custody of Osamah until June 13, 2001 and of Maareah, Safiyya and Asmaa until January 1, 2002 at which point sole custody would be transferred to respondent; the noncustodial parent would be entitled to a continuous three-month visitation period. This agreement was later incorporated, but not merged, into their October 29, 1999 judgment of divorce.

In June 2000, respondent took the children to Saudia Arabia for a three-month visitation. As it neared an end, respondent made numerous excuses for the delay in their return. Petitioner was ultimately refused all contact with the children and was informed on September 27, 2000 that they would not be returning. By that time, respondent asserted that he had received sole custody from a Saudi court; it is undisputed that petitioner never received notice of such proceedings.

There were continued efforts by petitioner during the next two years to regain custody of the children. She was severely limited by respondent's subversive measures, cultural barriers and an inaccessibility to the Saudi legal system. In April 2002, she learned that respondent was planning a trip to Texas with the children. Armed with an order from the Broome County Family Court, the children were seized and returned to New York. With a pending violation petition and competing modification petitions, Family Court scheduled a hearing.

At such hearings, respondent testified, among other things, that he failed to abide by the negotiated agreement because petitioner failed to properly school the children. He contended that his new wife is equal to that of petitioner and that the children were thriving in the Muslim environment. He believed that petitioner should be allowed four weeks of visitation every two years.

Petitioner proffered her own testimony as well as that of Glen Skoler, a forensic psychologist, William Hilton, an attorney specializing in child custody jurisdictional disputes and Kristine Uhlman, an expert in international child abduction disputes arising in Middle Eastern countries. Petitioner testified that she had been willing to abide by the negotiated terms of their agreement so long as the visitation provisions were complied with. Once respondent abducted the children, petitioner was denied both physical and telephonic access; she described her sporadic telephone conversations with the children as coached.

Petitioner has never been employed. She lives in her parents' five-bedroom home with each of the children having their own

bedroom. She is supported by her family and her current husband who earns approximately $1,000 per month; respondent earns approximately $100,000 annually. While petitioner does not question respondent's commitment to the children, she opposed an award of custody to him if the children would reside in Saudi Arabia.[1]

Family Court granted custody to respondent. Recognizing that Saudi Arabia was not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction (*see* 51 Fed Reg 10494 [1986]; List of Hague Convention Signatory Countries, <www.travel.state.gov/hague_list.html>) and that there was no method by which petitioner could enforce her visitation rights while the children resided in that country, the court imposed various conditions upon respondent. For his violation of the prior custody order, respondent was sentenced to a 30-day suspended term of incarceration conditioned upon his future compliance. Petitioner appeals[2] and, by order dated October 30, 2002, this Court granted her motion for a stay.

On March 17, 2003, respondent moved to dismiss that part of petitioner's appeal which contended that Family Court failed to hold a hearing to determine respondent's liability under Judiciary Law § 773. By decision and order entered April 7, 2003, this Court withheld determination until this appeal.

The overarching issue is whether there has been a sufficient change of circumstances to warrant a modification of custody to promote the best interests of the children (*see Eschbach v Eschbach,* 56 NY2d 167, 171 [1982]; *Matter of Daniels v Guntert,* 256 AD2d 940, 941 [1998]). Where, as here, the parties have entered into a custodial agreement, we are guided that " '[p]riority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded' to that agreement" (*Eschbach v Eschbach, supra* at 171, quoting *Matter of Nehra v Uhlar,* 43 NY2d 242, 251 [1977]). However, numerous factors must be considered in making such determination (*see Matter of McGivney,* 298 AD2d 642, 643 [2002], *lv denied* 99 NY2d 508 [2003]; *see also Eschbach v Eschbach, supra* at 172; *Matter of Daniels v Guntert, supra* at 941). While great deference is typically accorded to the findings made by Family Court (*cf. Matter of Betancourt v Boughton,* 204 AD2d 804, 806 [1994]), they must be set aside here because they lack

---

**1.** During two *Lincoln* hearings, the children expressed their preference to live with respondent in Saudi Arabia. The Law Guardian's recommendation mirrored their desire.

**2.** Petitioner's appeal from the order appointing the Law Guardian for all future proceedings has been abandoned.

a sound and substantial basis in the record (*cf. Matter of Lattuca v Natale-Lattuca,* 293 AD2d 805, 806 [2002]).

Established law dictates that where there is a willful interference with a noncustodial parent's right to visitation, it is deemed to be " 'so inconsistent with the best interests of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as [a] custodial parent' " (*Matter of Glenn v Glenn,* 262 AD2d 885, 887 [1999], *lv dismissed and lv denied* 94 NY2d 782 [1999], quoting *Entwistle v Entwistle,* 61 AD2d 380, 384-385 [1978], *appeal dismissed* 44 NY2d 851 [1978]). To be sure, evidence of a parent's *occasional* interference with visitation cannot alone decide a custody dispute; reversal of a custody order should not be a weapon wielded as a means of punishing a recalcitrant parent (*see Matter of Hess v Hess,* 243 AD2d 763, 765 [1997]; *Matter of Irwin v Neyland,* 213 AD2d 773, 774 [1995]). Here, however, there was no occasional interference.

Respondent intended to *permanently* remove petitioner from the children's lives. In our view, Family Court failed to fully appreciate the magnitude of respondent's actions. Despite the fact that the parties and the children are American citizens, respondent, after initially submitting to the jurisdiction of our courts, allegedly sought and obtained an ex parte custody order from an Islamic court and secreted the children from petitioner for almost two years. Even when he traveled to the United States, he continued to conceal the children and promote their further alienation from petitioner (*see Matter of Nehra v Uhlar, supra* at 248-249; *Matter of Lattuca v Natale-Lattuca, supra* at 806; *Matter of Spurck v Spurck,* 254 AD2d 546, 547 [1998]). In contrast, petitioner presented a willingness, despite respondent's abhorrent behavior, to continue to provide him with access to the children. She has a nurturing home and continues to be committed to fostering their intellectual, emotional and spiritual development. The uncontroverted testimony of Hilton and Uhlman supports petitioner's contention that the safeguards put in place by Family Court to ensure petitioner's access to the children in Saudi Arabia are wholly insufficient.

Viewing the totality of this situation and the factors here relevant (*see Eschbach v Eschbach, supra; Matter of McGivney, supra*), we modify so much of the order of Family Court as granted respondent's application and granted him sole custody of the children. Despite the change in custody contemplated by the parties' agreement, the desires of the children (expressed after years under respondent's control) and the Law Guardian's

recommendation (*see Matter of Daniels v Guntert, supra* at 941), we find it clear that the best interests of these children warrant an award of sole custody to petitioner. Respondent is, however, hereby awarded all visitation detailed in the order appealed from as it pertained to petitioner, with the further condition that such visitation take place within the United States and that respondent advise petitioner of the children's location. In addition, petitioner shall be the sole custodian of the children's passports.

As to petitioner's contention that Family Court should have held a hearing pursuant to Judiciary Law § 773 to determine her entitlement to compensation for her "actual loss or injury" (Judiciary Law § 773), both parties concede that a hearing was held on the issue of counsel fees incurred in this proceeding. However, there is no proof that such hearing also considered the fees incurred prior thereto. With respondent admitting that petitioner had filed an application requesting both counsel fees and litigation expenses, we find no basis to dismiss any portion of petitioner's appeal (*cf. Matter of Evans v New York State Dept. of Health,* 234 AD2d 762, 763-764 [1996]; *see Matter of Lembo v Mayendia-Valdes,* 293 AD2d 789, 790 [2002]; *Matter of Daniels v Guntert,* 256 AD2d 940, 942 [1998], *supra*).

Cardona, P.J., Crew III, Rose and Kane, JJ., concur. Ordered that the order dated September 16, 2002 and entered September 17, 2002 is modified, on the law, without costs, by reversing so much thereof as denied petitioner's custody petition and granted respondent's custody petition; petitioner's petition granted, respondent's petition denied, petitioner awarded sole custody of the children, respondent awarded eight weeks of visitation to take place in the United States to occur between the semesters of school, petitioner awarded sole custodian of the children's passports and matter remitted to the Family Court of Broome County for a hearing on counsel fees and litigation expenses as provided in this Court's decision; and, as so modified, affirmed. Ordered that the order entered September 17, 2002 appointing a Law Guardian is affirmed, without costs. Ordered that respondent's motion is denied, without costs.