FIRST DIVISION
NOVEMBER 13, 2007

No. 1-06-3304

| | | |
|---|---|---|
| *In Re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DHEY ABDUL SAHEB, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 05 D 1733, 05 D 5633 |
| | ) | & 05 CH 22625 |
| and | ) | |
| | ) | |
| ALIXIO KHAZAL, | ) | Honorable |
| | ) | Jeanne R. Cleveland Bernstein, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Respondent Alixio Khazal[1] and petitioner Dhey Abdul Saheb are the father and mother,
respectively, of six-year-old Basma Ali Khazal. The father appeals from the modified joint
parenting order entered by the circuit court of Cook County on October 12, 2006, which was
incorporated into the judgment for dissolution of marriage entered on the same day. The father
appeals from the order only to the extent that it grants visitation to petitioner in the United Arab
Emirates where she resides, instead of in Illinois where respondent and the minor child reside.
For the reasons stated below, we affirm.

---

[1] The father's notice of appeal spelled his first name as "Alixio." The father's appellate
brief spelled his first name as "Alexio."

No. 1-06-3304

BACKGROUND

The father, then 34 years old, and the mother, then 24 years old, were married on February 20, 2000,[2] in the United Arab Emirates (UAE), where the marriage was registered. One child was born during the marriage, namely a daughter, Basma Ali Khazal, on June 20, 2001, in Chicago, Illinois. On May 20, 2005, the mother filed a petition in Chicago for dissolution of marriage, which claimed that the parties had been living separate and apart since November 2004.

Dr. John M. Palen, who has a doctorate in social work, was appointed by the court on June 9, 2005, to evaluate the parties and the minor child and made the following findings in a report dated December 12, 2005. The parties spent half their married life living apart from each other. From the date of their marriage until the mother 's return from the UAE to Chicago in May 2005, the parties had spent a total of 2 ½ years away from each other, in order for the mother to finish her medical school studies in the UAE. From the time of the child's birth in June 2001 until she returned with her mother in May 2005, the child spent two of her then four years away from her father.

Dr. Palen stated in his report:

"Each parent's version of the marriage, description of Alex's

relationship with Basma, and recollection of the circumstances

---

[2]The judgment for dissolution of marriage, dated October 12, 2006, stated that the parties were married on February 20, 2000. However at the October 12 hearing, the mother testified that they were married on August 17, 2000, and the trial court so found, orally on the record.

2

leading to Dhey's return from the United Arab Emirates are polar opposites of the other. It is not possible to definitively sort out fact from fiction."

Dr. Palen found that the parties disagreed about the circumstances of the mother's return to Chicago. It is undisputed that mother and child left for the UAE in December 2004 with the father's consent so that the mother could prepare for a United States medical licensing exam and that the father visited the UAE in both January and March 2005. The father claimed to Dr. Palen that the mother arrived in the UAE in December 2004 with no intent of returning and that she pushed back the date of her medical exam in order to prolong her stay indefinitely. The mother denied to Dr. Palen any plan to deprive the father of access to their daughter and did return in May 2005.

Dr. Palen's report listed documents reviewed by him, which included: an order issued by a court in the UAE on March 17, 2005, at the father's request to prevent the child from traveling until further notice; and a cancellation of the travel ban, dated May 16, 2005. The father sought the travel ban out of a fear that the mother would travel to Iraq to live with a cousin there. The mother admitted that she obtained visas in March 2005 to travel to Iraq. After the circuit court in Cook County issued an order on May 2, 2005, requiring the mother's and child's return to Chicago prior to May 25, 2005, the father apparently sought cancellation of the UAE travel ban.

Dr. Palen recommended in his report that the mother have primary residential custody and that the parents share legal custody pursuant to a modified joint custody order, which allocated medical decisions to the mother and educational decisions to the father.

3

Prior to the court hearing on June 26, 2006, the parties indicated their intent to reside in different countries, with the father residing in Illinois and the mother residing in the UAE. Prior to the hearing, the parties agreed to most of the terms contained in the subsequently-issued joint parenting order, namely, that they would share joint legal custody, that the child would reside primarily with the father in Chicago, that the father would have residential custody and that the mother would have visitation. However, the parties could not agree on whether the mother's visitation would take place in Illinois or in the UAE.

On April 11, 2006, the father filed a motion to require the guardian ad litem to investigate issues "relating to the Hague Convention." At a pretrial conference on June 26, 2006, with all counsel present, Michael Zaslavsky, the guardian ad litem, recommended that the trial court permit visitation in the UAE even though the UAE was not a party to the Hague Convention and that the court set a cash bond to guarantee the child's return.

At a hearing on June 26, 2006, both parents testified. The mother agreed to pay airfare for biannual visits by the child to the UAE with an accompanying adult and to post a bond to secure the child's return. The mother admitted that she had obtained visas in March 2005 to travel with the child to Iraq and that she had objected in early 2005 to the father returning to Chicago without her and with the child. The mother testified that she was a Canadian citizen in the process of becoming a United States citizen, and intended to take a United States medical licensing exam. The mother testified that the child would only be eligible for a visa issued by the UAE which permitted the child to stay a maximum of 60 days in the UAE.

The mother testified that she wanted parenting time in the UAE instead of the United

States for the following reasons:

> "First of all, I don't have any family here, any friends, I don't have car, I don't have income. Even if I come here, I want to have fun with my daughter. And over there in the United Arab Emirates, I have car, I'm going to have everything there, and having family, friends, we can go everywhere we can, we're going to have fun there."

When the trial court asked the mother, "[H]ow do we know you're committed to returning her[?]" the mother replied:

> "I don't know how to say it, but if I want to do this, I'm going to do it from the beginning. Why I came here and have all these problems and just stay near because I want to obey the law and be with the law, I don't want to just go and run away and have miserable life for my daughter, I want to be on the same side."

At the June 26 hearing, the father testified that he purchased the airline tickets for the mother and child to travel to the UAE in December 2004 and that the round-trip tickets had an open-ended return date for six months. The father testified that, in January 2005, he flew to the UAE and the mother refused to let him bring the child back to the United States. When he returned to the United States, he contacted several offices in an attempt to bring the child back to the United States. The offices included the United States embassies in Kuwait and the UAE, the "Washington D.C. Department of children issue," and the office of Senator Dick Durbin.

5

On February 18, 2005, the father obtained an emergency order of protection from the circuit court of Cook County directing the mother to return the child to Chicago.

The father further testified that he returned to the UAE in March 2005 and initiated a UAE court proceeding to return the child to the United States  He claimed that the emergency order of protection was unenforceable in the UAE but that on March 16, 2005, he did obtain an order from a UAE civil court prohibiting the child from leaving the UAE.  He testified that he later learned that, coincidentally on the same day, March 16, 2005, the mother had obtained a visa for her and the child to travel to Iraq.  He claimed that the trip was for the purpose of the mother entering into an arranged marriage in Iraq.  The father testified that, while he was in the UAE in March 2005, he obtained a second United States passport for the child.

The circuit court of Cook County extended the emergency order of protection  until May 2, 2005.  On May 2, 2005, the trial court issued an order stating that the mother was still in the UAE due to a travel restriction and that the mother and child shall return for a court appearance on May 26, 2005, which they did.

In the modified joint parenting order, dated October 12, 2006, the trial court ordered visitation in the UAE during the child's winter and summer breaks from school.  The winter visit is two weeks long; and the summer visit starts one week after school lets out for the summer and ends one week before school starts again in the fall.  The order provided that the father or another agreed-upon adult shall accompany the child to and from the UAE on all airline flights, and that the mother shall pay for the airline tickets for the child and the accompanying adult.  If the father accompanies the child, then he has the right to retain her passport during the visit.  If another

adult accompanies the child, then he or she must deposit the child's passport with the American embassy in Dubai for the duration of the visit. In addition to paying for the trip, the mother has the responsibility to arrange for the child's visa to the UAE. The father has the right to a one week visit during the mother's summer visitation time in the UAE.

As a condition precedent to visitation, the mother must deposit a cash bond of $100,000 with the clerk of the circuit court of Cook County, Illinois. If the mother fails to return the child to the father pursuant to the joint parenting order, then the monies in the account shall be forfeited and paid to the father. The mother was also ordered to pay child support of $50 per week while she is unemployed and 20% of her net income when she becomes employed.

On October 9, 2007, the appellate court on its own motion ordered that the appeal shall be taken on the record and the appellant's brief only.

ANALYSIS

On appeal, the father asks this court to reverse that portion of the modified joint parenting order which granted visitation in the UAE. The father seeks reversal on the grounds that: first, the trial court erred by granting visitation in a country that is not a party to the Hague Convention and thus will not enforce an American court order; second, the trial court erred by granting visitation in the UAE without first obtaining testimony or a written report from the guardian ad litem, and without considering the written report of the court-appointed psychologist; and third, the trial court erred by ordering a security bond to guarantee the mother's return of the child without first hearing testimony on what would constitute a reasonable amount for the bond.

7

No. 1-06-3304

<u>Visitation in a Non-Hague Country</u>

Section 607(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) provides that "[a] parent not granted custody of the child is entitled to reasonable visitation rights," 750 ILCS 5/607(a) (West 2006). The "trial court has broad discretion in fashioning the terms of visitation and those terms will not be overturned absent proof that the court has abused its discretion." <u>In re Marriage of Engelkens</u>, 354 Ill. App. 3d 790, 792 (2004). "An abuse of discretion exists where no reasonable person would agree with the position of the trial court." <u>Brax v. Kennedy</u>, 363 Ill. App. 3d 343, 355 (2005).

The issue of visitation in this case is governed by section 607(a), not section 607(c) (750 ILCS 5/607(c) (West 2006)). Section 607(c) prohibits a trial court from restricting a noncustodial parent's visitation rights "unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." 750 ILCS 5/607 (c) (West 2006). The appellate court has interpreted section 607(c) to protect the right of a noncustodial parent to "standard" visitation, which includes unsupervised, overnight visitation in the home of the noncustodial parent. <u>In re Marriage of Mouschovias</u>, 359 Ill. App. 3d 348, 358 (2005); <u>In re Marriage of Wycoff</u>, 266 Ill. App. 3d 408, 416 (1994); <u>Gibson v. Barton</u>, 118 Ill. App. 3d 576, 580 (1983). Elimination of a "standard aspect[]" of visitation is a restriction, governed by section 607(c) (750 ILCS 5/607(c) (West 2006)), which requires a finding of serious endangerment. <u>Mouschovias</u>, 359 Ill. App. 3d at 358; <u>Wycoff</u>, 266 Ill. App. 3d at 416; <u>Gibson</u>, 118 Ill. App. 3d at 580.

In the case at bar, the trial court granted visitation in the home of the noncustodial parent,

8

which would certainly be standard, but for the fact that it occurs in the UAE. While visitation in the noncustodial home is "standard," regular visitation in a foreign country 24 hours away by plane is not. Although section 607(c) protects "the standard aspects of visitation," it does not protect "unusual rights." Mouschovias, 359 Ill. App. 3d at 358. Thus, the serious endangerment standard of section 607(c) does not apply to the case at bar. The issue in the case at bar is whether the trial court abused its broad discretion in fashioning the terms of visitation pursuant to Section 607(a).

Although custody in one country and visitation in another country is an unusual arrangement, it has been permitted. In re Marriage of Pickholtz, 178 Ill. App. 3d 512, 515 (1988) (agreed order permitted noncustodial father biannual visitation in Israel); Randivojevic v. Randivojevic, 11 Ill. App. 3d 116, 118 (1973) (in contested case, trial court awarded custody to mother in Germany and permitted father one-month visitation in United States). In re Marriage of Condon, 62 Cal. App. 4, 533, 540, 549, 73 Cal. Rptr. 2d 33, 38, 44 (1998) (trial court did not abuse its discretion by permitting the mother to move with the children to Australia and granting the father visitation in the United States during school vacations).

The father claims that the trial court abused its discretion by ordering visitation in the UAE because, first, the UAE will not enforce the order, and second, the mother will not voluntarily return the child.

The UAE is not a party to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) 51 Fed. Reg. 10494 (1986), and the mother's attorney stipulated to this fact at a hearing on June 26, 2006. The Hague Convention provides a civil legal

9

remedy to parents seeking the return of or access to their child (Hague Convention arts. 1, 8, 9, and 10). Countries that have signed the Hague Convention have agreed to the prompt return of a child who was habitually resident in a signatory country and who was removed or retained in another signatory country in violation of a parent's custodial rights (Hague Convention, arts. 1, 3, 4). According to the list of signatory countries maintained by the United States Department of State's Bureau of Consular Affairs, the UAE is not a signatory to the Hague Convention, see Bureau's website at http://travel.state.gov/family/abduction/hague_issues.html.

The father claims that since the UAE is not a Hague signatory, he will have no legal recourse if the mother refuses to return the child from a visit to the UAE. However, contrary to the father's claim, he was able to obtain some legal recourse in the UAE. A court in the UAE issued an order on March 17, 2005, at the father's request in order to prevent the child from traveling to Iraq; and then apparently at the father's request, the UAE court cancelled the ban on May 16, 2005, to allow the child to travel back to Chicago.

The father claims that the trial court abused its discretion by granting visitation in a country that will not enforce a United States custody order, but he fails to cite any legal authority to support his claim. "A point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited." People v. Ward, 215 Ill. 2d 317, 332 (2005); In re Marriage of Bates, 212 Ill. 2d 489, 517 (2004) ("A reviewing court is entitled to have issues clearly defined with relevant authority cited"); Rosier v. Cascade Mountain, Inc., 367 Ill. App. 3d 559, 568 (2006) (this court held that, by failing to offer any supporting legal authority or reasoning, plaintiffs waived consideration of their theory for asserting personal jurisdiction over defendants);

10

Ferguson v. Bill Berger Associates, Inc., 302 Ill. App. 3d 61, 78 (1998) ("it is not necessary to decide this question since the defendant has waived the issue" by failing to offer case citation or other support as Supreme Court Rule 341 requires); 210 Ill. 2d R. 341(h)(7) (argument in appellate brief must be supported by citation).

The father did cite a New York custody case, Ahmad v. Naviwala, 762 N.Y.S.2d 125, 306 A.D.2d 588 (3d. Dept. 2003). In Ahmad, a New York appellate court reversed a trial court's award of custody to the father and granted sole custody to the mother, where the father secreted the children for two years in Saudi Arabia, obtained an ex parte award of custody in Saudi Arabia and attempted to conceal the children when they traveled to the United States. Ahmad v. Naviwala, 762 N.Y.S.2d 125, 306 A.D.2d 588 (3d. Dept. 2003). The Ahmed case is readily distinguishable from the case at bar. In the case at bar, the mother returned the child to the United States with notice to the father and did not seek custody in another jurisdiction.

The case at bar is also distinguishable from Mitchell v. Mitchell, 252 Ga. 46, 311 S.E.2d 456 (1984), a custody case prohibiting travel to the UAE. In Mitchell, the Supreme Court of Georgia held that a trial court had discretion to order the parents not to procure passports for the children, where the parties had resided in the UAE for seven years prior to the divorce, the father had absconded to Georgia with the children immediately prior to filing for divorce in Georgia and the mother objected to residence in Georgia. Mitchell, 252 Ga. at 46-47, 49, 311 S.E.2d at 457-59. The Georgia Supreme Court held that the trial court had the discretion to prohibit obtaining passports, since the father would have no legal recourse in the UAE if the mother took the children back to the UAE. Mitchell, 252 Ga. at 49, 311 S.E.2d at 459.

The Mitchell case is distinguishable from our case in two respects. First, after hearing testimony by the parties, the trial court in Mitchell exercised its discretion to forbid out-of-United States travel, whereas the trial court in the case at bar exercised its discretion to permit it. Obviously, the trial courts' firsthand assessments of the parties in their respective cases was vastly different. Second, the mother in the case at bar has agreed to the residence of her child in the United States and returned the child to the United States for that purpose.

In light of the fact that the father was able to obtain some legal recourse in the UAE and the fact that the mother returned the daughter to the United States from the UAE, this court cannot find that the trial court abused its discretion in permitting visitation in the UAE. A trial court is in a better position than a reviewing court for weighing the evidence. Bates, 212 Ill. 2d at 516. This is particularly true when a trial court must judge the credibility of conflicting witnesses in order to determine what is in the best interests of a child. Bates, 212 Ill. 2d at 516.

In the alternative, the father argues that the governing statute in the case at bar is not the visitation statute (750 ILCS 5/607 (West 2006)), but a removal statute (750 ILCS 5/609 (West 2006)). Removal and visitation cases require different standards of review. In a removal case, this court will reverse the trial court's decision only if it is against the manifest weight of the evidence. Ford v. Marteness, 368 Ill. App. 3d 172, 175 (2006). By contrast, in a visitation case, this court will reverse only for an abuse of discretion. Engelkens, 354 Ill. App. 3d at 792.

In support of his claim that the removal statute governs, the father asserts in his appellate brief that "the parties treated visitation overseas as removal of Basma to the United Arab Emirates" and that the "guardian ad litem made his recommendation based upon the removal

12

statute." However, the father's appellate brief fails to cite any legal authority for his claim that the removal statute should govern the trial court's award of visitation. As noted above, any points not supported by legal authority in an appellate brief are generally waived. In addition, the appellate court has previously treated visitation in another country as an issue pursuant to section 607, the visitation statute (750 ILCS 5/607 (West 2006)). Mouschavias, 359 Ill. App. 3d at 358-359.

To the extent that the removal factors provide this court with some guidance, they do not suggest a different outcome. Section 609, the removal statute, provides:

> "The court may grant leave, before or after judgment, to
> any party having custody of any minor child or children to remove
> such child or children from Illinois whenever such approval is in the
> best interests of such child or children. The burden of proving that
> such removal is in the best interests of such child or children is on
> the party seeking the removal. When such removal is permitted, the
> court may require the party removing such child or children from
> Illinois to give reasonable security guaranteeing the return of such
> children." 750 ILCS 5/609 (a)(West 2006).

When deciding a removal petition, a trial court must consider the following five factors: first, whether the proposed move will enhance the quality of life for both the custodial parent and the child; second, whether the proposed move is a ruse designed to frustrate or defeat the noncustodial parent's visitation; third, the motives of the noncustodial parent in resisting removal;

fourth, the visitation rights of the noncustodial parent; and fifth, whether a reasonable visitation schedule can be achieved if the move is allowed. Ford, 368 Ill. App. 3d at 175, citing In re Marriage of Eckert, 119 Ill. 2d 316 (1988).

These five factors are phrased in terms of the custodial parent seeking removal. For these factors to provide any guidance to this court in the case at bar, we have to read "noncustodial parent" wherever the factors state "custodial parent."

First, visitation in the UAE will enhance the quality of life for both the mother and the child. The mother now lives in the UAE. Visitation in the mother's home will allow the child to know her mother better and participate in her mother's daily life. In addition, the mother will be able to provide activities for her child in her community which would be difficult to arrange if the mother were merely a visitor in the United States Second, although the father has claimed that the mother will not return the child, he has not claimed that the mother's desire for visitation in the UAE is a mere ruse. Third, as far as the motives of the father in resisting visitation in the UAE, he admitted in his brief to this court that the parties' relationship has been "very acrimonious." During the hearing on June 26, 2006, the trial court noted that the father refused to look at the mother during her testimony. Fourth, as for the father's visitation rights, the father has the right to visit his daughter for one week during her summer sojourn in the UAE. Fifth, the father has not claimed that the visitation schedule is unreasonable. Thus, to the extent that the five removal factors provide some guidance, they do not suggest a different outcome. As noted before, this court finds that the trial court did not abuse its discretion by granting visitation in the UAE.

<u>No Testimony or Written Report From Guardian Ad Litem</u>

The father claims that the trial court erred when it failed to obtain testimony or a written report from the court-appointed guardian <u>ad litem</u> and deprived the father of the opportunity to cross-examine the guardian <u>ad litem</u>. In lieu of a written report or testimony, the guardian <u>ad litem</u> provided an oral report to the trial court, which included a recommendation that the trial court permit visitation in the UAE.

Section 506 of the Dissolution Act states that a "guardian u shall testify or submit a written report to the court regarding his or her recommendations." 750 ILCS 5/506(a)(2) (West 2006). Section 506 also provides that the "guardian ad litem may be called as a witness for purposes of cross-examination regarding the guardian ad litem's report or recommendations." 750 ILCS 5/506(a)(2) (West 2006). The Illinois Supreme Court has held that a trial court's denial of a party's request to cross-examine a guardian <u>ad litem</u> is a denial of procedural due process. <u>Bates</u>, 212 Ill. 2d at 514. This due process violation is subject to harmless error analysis. <u>Bates</u>, 212 Ill. 2d at 515.

In the case at bar, the guardian <u>ad litem</u> presented his recommendations in an oral report to the court during a pretrial conference with counsel present. The father did not claim in his appellate brief that he objected at the pretrial conference to the oral report or that he made a request at that time for testimony, cross-examination or a report in writing. Apparently for the first time on appeal, the father claimed that the guardian's oral report surprised him and precluded his ability to prepare adequately for trial. He failed to cite to any place in the record where he made these claims to the trial court. <u>Bates</u>, 212 Ill. 2d at 517 (a party must provide citations to

the relevant pages in the record); 210 Ill. 2d R.341(h)(7) (appellant is required to submit a brief with citation to "the pages of the record relied on").

Since the father failed to object in the court below, he has waived consideration of these issues on appeal. Lange v. Freund, 367 Ill. App. 3d 641, 648-49 (2006). The plain error doctrine does permit an appellate court to review errors not properly preserved at the trial level. Lange, 367 Ill. App. 3d at 649; Gillespie v. Chrysler Motors Corp., 135 Ill. 2d 363, 375 (1990). "But this doctrine is applied in civil cases only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process." Lange, 367 Ill. App. 3d at 649; Gillespie, 135 Ill. 2d at 377.

Before an error can rise to the level of a plain error, there must first be a "threshold-level showing" of prejudice. Lange, 367 Ill. App. 3d at 649. The father has not explained what he would have done differently if he had received the guardian's recommendation earlier and in writing. Thus, this court finds both that the father waived this issue for appeal and that it did not rise to the level of a plain error.

In addition, the lack of cross-examination of the guardian ad litem did not violate the father's right to due process. As noted before, a due process violation occurs when a trial court denies a party's request to cross-examine a guardian ad litem. Bates, 212 Ill. 2d at 514. However, the Bates decision, which the father cites, is not on point. In Bates, the party requested the opportunity to examine the Guardian ad litem; by contrast, in the case at bar, the father never made such a request. Bates, 212 Ill. 2d at 514. Thus, no due process violation occurred.

Recommendation of Section 604(b) Evaluator

The father also claims that this court should reverse the trial court's order of visitation in the UAE because the trial court failed to consider the report of Dr. Palen, who was appointed by the court to evaluate the parties and the child. In his written report dated December 12, 2005, Dr. Palen recommended that the child "continue to reside in the primary care of the mother" and that the parties share legal custody. With respect to travel, Dr. Palen recommended that "neither parent be able to travel with Basma out of the United States without leave of the court," that "each of the parents post a sizeable bond to ensure that Basma not be removed from the United States or secreted from the other parent," and that "[h]er removal from the United States would be irreparably detrimental to her well-being."

In direct contradiction of the father's claim that the trial court failed to consider Dr. Palen's report, the trial court specifically referred to Dr. Palen's report in its written judgment for dissolution of marriage, dated October 12, 2006. In fact, with respect to travel, the trial court implemented most of Dr. Palen's recommendations. First, the trial court's order implemented the parties' agreement and Dr. Palen's recommendation that the child not be removed from the United States but remain here on a permanent basis. Second, the trial court ordered the posting of a sizeable bond, as Dr. Palen recommended. Third, Dr. Palen recommended that the child not travel out of the United States without leave of court, and the parenting order gave specific leave of court for the child to travel on biannual visits to her mother in the UAE.

The father's appellate brief failed to cite any pages in the record to support his claim that the trial court did not consider Dr. Palen's report. In addition, even if the father's claim was

factually correct, his brief failed to cite any legal authority for the proposition that a parenting order must be reversed if a trial court does not consider the psychologist's report. As noted above, a party waives a claim by failing to support it with citations to legal authority or the record. Ward, 215 Ill. 2d at 332; Bates, 212 Ill. 2d at 517; 210 Ill. 2d R.341(h)(7).

This court will not reverse a trial court simply because it decided not to follow all of a psychologist's recommendations. Dr Palen was appointed pursuant to section 604(b), which permits the trial court to "seek the advice of professional personnel," 750 ILCS 5/604(b) (West 2006) . Nothing in section 604 requires the trial court to follow the advice of the 604(b) evaluator. Advice is simply that – advice. The trial court is the ultimate fact finder in a child custody case, not the expert witness. In re Marriage of Gambla, 367 Ill. App. 3d 441, 468 (2006). "Prohibiting a trier of fact from rejecting an expert's opinion on an ultimate issue would usurp the role of the trier of fact." Gambla, 367 Ill. App. 3d at 468 (this court affirmed a trial court's award of custody to the mother, despite the contrary recommendations of the two psychologists who were ordered to perform custody evaluations). Thus, the trial court's decision not to implement all of Dr. Palen's recommendations is not, by itself, a ground for reversal.

<u>Amount of Security Bond</u>

The father claims that this court should reverse the part of the order providing for visitation in the UAE because the trial court failed to hear evidence concerning the appropriate amount of the security bond before setting its amount. Specifically, the father claimed in his brief to this court that: "[a]t the trial, Counsel for Petitioner Father tried to ask what would be a fair amount for the bond, but the Court sustained the objection, not allowing testimony on the

subject." The brief then cites the cross-examination of the mother by the father's attorney during the June 26th hearing. The brief cites a page in the record which contains the following colloquy:

MR. SIMKIN: "How much of a cash bond are you anticipating suggesting to the Court would be a fair amount?

MS. AVERY:[mother's attorney]: Judge, I'm going to object to the question because that's part of our settlement negotiations between attorneys and at this point –

THE COURT: It hasn't been agreed to?

MS. AVERY: Well, frankly, we haven't even discussed the number. My client, as she said earlier, will do whatever your Honor rules.

MR. SIMKIN: I'll rephrase my question. If the Court sets a cash amount of a bond [sic] has to be deposited either with the Court or in some other fashion and you are unable to make that bond, are you agreeable that your parenting time in the United Arab Emirates will not commence until that bond is posted? Do you understand my question?

MS. SAHEB: I do understand.

MS. AVERY: I guess I'd object to the follow [sic] of the question, Judge, because we don't know yet what the terms of the agreement are going to state. So, I mean Counsel is –

19

> THE COURT: I think she answered that she is willing to post a bond.
>
> MS. AVERY: Yes.
>
> THE COURT: And the terms are to be determined.
>
> MR. SIMKIN: Okay.
>
> MS. AVERY: Yes."

The above colloquy shows that the trial court deferred to the representation of the mother's attorney, to which the father's attorney acquiesced, that the attorneys were engaged in settlement negotiations and that questioning about the amount would endanger those negotiations.

The Illinois Supreme Court has held that, under " 'the doctrine of invited error,' " a party " 'may not request to proceed in one manner and then later contend on appeal that the course of action was in error.' " People v. Harvey, 211 Ill. 2d 368, 385 (2004), quoting People v. Carter, 208 Ill. 2d 309, 319 (2003). To permit a party to use, as a vehicle for reversal, the exact action which it procured in the trial court " 'would offend all notions of fair play' " and encourage duplicity by litigants. Harvey, 211 Ill. 2d at 385, quoting People v. Villarreal, 198 Ill. 2d 209, 227 (2001). Thus, when a party "procures, invites or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal. People v. Bush, 214 Ill. 2d 318, 332 (2005); Harvey, 211 Ill. 2d at 386; People v. Caffey, 205 Ill. 2d 52, 114 (2001).

In the case at bar, the father's attorney acquiesced to the mother's attorney's representation to the trial court concerning ongoing settlement negotiations. The father cannot now complain about an action that he invited. Thus, the lack of testimony about an appropriate

amount for the bond is not a ground for reversal.   In addition, the father has offered no evidence that the $100,000 bond set by the trial court was inadequate.

CONCLUSION

For the foregoing reasons, the modified joint parenting order of the trial court is affirmed. First, the trial court did not abuse its discretion by permitting visitation in a country that is not a party to the Hague Convention, where the father was previously able to obtain some legal recourse in the non-Hague country and the mother previously returned the child to the United States.  Second, by failing to object in the trial court, the father waived consideration on appeal of the lack of testimony or a written report by the guardian <u>ad litem</u>.  Third, the trial court implemented most of the psychologist's recommendations with respect to travel, and  the trial court's decision not to implement all of the psychologist's recommendations  is not, by itself, a ground for reversal.  Fourth, the father cannot now complain about the lack of testimony about the appropriate amount of the security bond when his actions at the trial court invited the finding by the trial court and when the father failed to show that the amount of the security bond was inadequate.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.