2026 IL App (1st) 251946-U

SIXTH DIVISION

May 8, 2026

No. 1-25-1946

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RIMA MUSA, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20 D 929 |
| | ) | |
| MOHAMMED SHALTONI, | ) | Honorable |
| | ) | Andrea M. Webber, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirm the circuit court's modification of a parenting plan to adjust a travel bond and increase electronic communication between appellant and his children.

¶ 2    This case arises from a modification of the parenting plan between appellant Mohammed

Shaltoni and appellee Rima Musa involving their three minor children. Through a series of motions

in early summer 2025, Shaltoni sought to amend the plan to increase the travel bond Musa had to pay to travel with the children to Jordan, require Musa to drop a case she had pending against Shaltoni in Jordan, and to facilitate greater electronic communication between Shaltoni and the children. Across two orders, the circuit court agreed to increase the bond, but only from $2500 to $3500 and not until 2026, and granted Shaltoni increased communication, but not to an extent satisfactory to Shaltoni. Shaltoni appeals, and we affirm.

¶ 3                                    BACKGROUND

¶ 4     Musa filed her "verified petition for legal separation" on January 31, 2020, wherein she represented that she and Shaltoni were married in Jordan in 2008 and had three minor children, ages nine, seven, and two. She cited irreconcilable differences as the reason for the separation.

¶ 5     On June 14, 2022, the circuit court entered a "Parenting Plan and Allocation of Parental Responsibilities Judgment (the Plan)," pursuant to which Musa was "designated as the parent having substantial parenting time." The Plan prohibited relocating the children more than 25 miles from Shaltoni's residence in Orland Park, Illinois, without court approval or the written consent of both Musa and Shaltoni. As to electronic communication, the Plan stated, "Musa may contact the minor children on Saturdays at 1:00 pm when they are in the physical possession of Shaltoni. Shaltoni may contact the minor children on Saturday's at 11:00 a.m. when they are in the physical possession of Musa. If a parent needs to adjust a time for the communication, that parent shall contact the other parent by 9:00 p.m. on Friday." The Plan also noted that the court would resolve the issue of travel to Jordan, the couple's home country, at a later date.

¶ 6     Following a trial, the circuit court entered a dissolution order on September 9, 2022. The order updated the Plan by addressing the Jordania travel issue. Specifically, the order allotted Musa 30 consecutive days with the children during their summer vacation from school, allowing her to

travel with them to Jordan. The order noted there was "extensive testimony" regarding Musa's past travel to Jordan with the children. The court further found that during any such trips, Musa had to make the "children available for Facetime daily" and post a $2500 travel bond "with the Clerk of the Court when traveling to Jordan or any non-[Hague Convention on the Civil Aspects of International Child Abduction] (the "Hague Convention") countries." The Hague Convention, to which the United States is a signatory, but Jordan is not, "seeks to secure the prompt return of children wrongfully removed to or retained in any signatory state." *In re Marriage of Krol and Kubala*, 2015 IL App (1st) 140976, ¶ 17. "A central purpose of the Convention is to 'discourage parents from crossing international borders in search of a more sympathetic forum' in which to litigate custody issues." *Id.* (quoting *In re Lozano*, 809 F. Supp. 2d 197, 217 (S.D. N.Y. 2011)). Based on Musa's past travel to Jordan with the children, the court allowed the current travel so long as Musa abided by the order.

¶ 7    On March 7, 2025, Musa filed a petition for relocation, asking the circuit court's permission to relocate with the children to Jordan. Therein, she contended that she had traveled with the children to Jordan on multiple occasions after her separation from Shaltoni, they had extended family there, and "the children have a social life there, and many relatives the same age as them." Musa also cited her preference for educating the children in Jordan, a lower cost of living, and Shaltoni's frequent parenting time cancellations.

¶ 8    In response, Shaltoni argued that because Jordan was not a signatory to the Hague Convention, there was "a significant risk the children may not be returned to the United States." He argued that if Musa wanted to relocate to Jordan permanently, the circuit court should grant him primary custody. Shaltoni also requested that the Plan be adjusted to require Musa to post a $25,000 travel bond for any temporary travel to Jordan. Before the court ruled on Musa's motion,

3

Shaltoni filed an Emergency Motion to Bar Unauthorized International Travel, requesting that the court order Musa not to travel to Jordan without court approval, and to increase the travel bond to $50,000 bond if the court approved any such travel. Shaltoni relayed that Musa informed him she had purchased round trip tickets to Jordan for June 23 to July 23, 2025, while the relocation motion was still pending. He argued this posed the obvious risk that Musa would travel with the children to Jordan and remain there, outside of the court's authority.

¶ 9    The circuit court denied Musa's relocation request on June 12, 2015. In its written order, the court relayed that the parties testified Shaltoni "cannot travel to Jordan based on [Musa's] action of filing a lawsuit in that country, asking for unpaid monies from [Shaltoni] related to their wedding." The order continued, "The evidence does not support that [Shaltoni] has the financial ability to pay for the travel for the minor children and himself for purposes of parenting time. This would impair the parent-child relationship between [Shaltoni] and the children." Finally, it emphasized that Jordan was a not a signatory to the Hague Convention, and as such the court would "have no power to enforce orders or rule on the best interest of the children" if it permitted relocation there.

¶ 10   In the same order, the circuit court denied Shaltoni's Emergency Motion to Bar Travel, explaining that its international travel finding in the Plan came after "a lengthy trial with multiple witnesses," during which Shaltoni testified that he would agree to Musa and the children traveling to Jordan under certain circumstances. In the present motion, the court found, Shaltoni failed to establish a change in circumstances that justified alteration of this provision as Shaltoni proposed. The court further noted Musa had previously paid the $2500 travel bond. The court did not deny Shaltoni relief entirely, however, as the order increased the travel bond to $3500 for travel to Jordan from 2026 and onwards, and found that, also starting in 2026, Musa "must show there are

no restrictions in place prohibiting [Shaltoni]'s ability to travel [to] Jordan" before she could travel there with the children.

¶ 11   On June 13, 2025, Shaltoni filed an "Emergency Motion to Enforce Emergency Access Rights and Require Legal Clearance for International Travel," arguing that the court should not have delayed Musa's obligation to remove the "procedural barriers" preventing Shaltoni from traveling to Jordan until 2026 because a problem might arise during Musa's 2025 trip. He again requested that the court order Musa to drop the Jordanian case before the trip. Prior to the court entering an order on this motion, Shaltoni also filed a "Motion to Reconsider Travel Bond Order," wherein he again asked the court to raise the travel bond for 2025 to $50,000, and once again asked that the court require Musa to remove the "legal restrictions" against his travel to Jordan.

¶ 12   Musa responded, arguing that since the entry of the Plan and dissolution order, she had traveled to Jordan with the children on multiple occasions, and returned each time. She further argued that Shaltoni could resolve the case in Jordan against him simply by paying a debt he owed of "5500 Jordanian dinars."

¶ 13   Aside from the Jordanian travel issue, Shaltoni also sought to modify the Plan's provisions regarding his contact with the children. Specifically, on May 13, 2025, he filed a "Motion to Facilitate Direct Telephonic and Electronic Communication with Minor Children," arguing that Musa interrupted and monitored his conversations with the children, pressured the children to end or shorten calls with Shaltoni, and generally engaged in "a pattern of conduct that obstructs consistent and meaningful father-child communication." He requested that the court modify the Plan to allow "direct, private communication." Musa responded on June 16, 2025, complaining that Shaltoni called the children "many days during the week without a scheduled time," counter

5

to the Plan. She also denied that she interrupted or monitored Shaltoni's phone calls with their children, and "disagreed" that she pressured the children regarding their contact with him.

¶ 14    On September 12, 2025, the circuit court denied Shaltoni's motions regarding international travel but granted his motion to facilitate communication in part. On electronic communications, the court ordered that Musa not prevent the children from freely communicating with Shaltoni, "restrict the phone usage as a way to circumvent this order," and that she provide the children's cell phone numbers to Shaltoni. It further ordered that Musa "ensure the children are available in a private setting to Facetime their father on Saturday's at 5:00 p.m." On travel, the court wrote that Shaltoni, "consented to [Musa's] travel as memorialized by the Judgment," and had failed to satisfy the requirements of a motion for reconsideration by pointing out new evidence, changes in the law, or a court error in applying existing law. Shaltoni filed his notice of appeal on September 24, 2025.

¶ 15    Shaltoni attempted to certify two bystander's reports for proceedings from (1) September 8, 2022, and (2) September 12, 2025. The circuit court never certified either report. Specifically regarding the September 12, 2025 hearing, the court clarified in an October 29, 2025 order that because the "parties both submitted their proposed bystander report and were unable to enter into any stipulations or agreements *** [n]either parties Bystander reports were certified." Instead, the court explained, "This report is submitted for inclusion in the record on appeal concerning the proceedings held on September 12, 2025," and stated that its "findings and directions stated in open court are reflected in the Court's September 12, 2025 order."

¶ 16                                        JURISDICTION

¶ 17    The circuit court entered its order modifying the Plan on September 12, 2025, and Shaltoni filed his notice of appeal on September 24, 2025, giving this court jurisdiction pursuant to Illinois Supreme Court Rules 303 (eff. July 1, 2017) and 304(b)(6) (eff. Mar. 8, 2016).

¶ 18                                    ANALYSIS

¶ 19    On appeal, Shaltoni challenges two aspects of the circuit court's September 12, 2025 order: (1) the court's refusal to increase the travel bond and force Musa to drop the Jordanian case against Shaltoni immediately, and (2) the court's electronic communications modification, on the basis that it effectively permits Musa to limit Shaltoni's communications to the Saturday Facetime interaction.

¶ 20    Shaltoni's claims arise from the circuit court's modification of a parenting plan. Under section 610.5(c) of the Illinois Marriage and Dissolution of Marriage Act ("the Act") (750 ILCS 5/610.5(c) (West 2024)), a circuit court may modify a parenting plan "when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment *** a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." We will not reverse a court's determination of what is in a child's best interests unless the decision is against the manifest weight of the evidence. See *In re Marriage of Royer*, 2025 IL App (2d) 240378, ¶ 35 (citing *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004)). A finding is against the manifest weight of the evidence where "the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006). Because the circuit court is in a superior position to assess witness credibility and weigh the evidence, we will not substitute our judgment for that of the circuit court when making this determination. *Id.*

¶ 21    We start with Shaltoni's claim regarding the travel to Jordan. The record shows that in deciding the international travel provision of the Plan in June and September 2022, the circuit court considered the testimony of multiple witnesses, and fashioned a compromise that required Musa to post a travel bond. This compromise took into consideration the fact that Jordan was not a signatory to the Hague convention, the expense of travel, and Shaltoni's testimony on the issue. It is undisputed that Musa then traveled to Jordan on multiple occasions while abiding by the restrictions and returning without incident. The record further shows that in 2025, the court denied Musa's attempt to relocate the children to Jordan in express consideration of the impact this would have on Shaltoni's relationship with them. The court also agreed to increase the travel bond, though only starting in 2026 and not to the amount Shaltoni requested. The court did this over Shaltoni's additional objection based on his difficulty entering Jordan due to a pending legal case there brought by Musa. The court's June 12, 2025 order expressly acknowledged this issue, and required Musa, starting in 2026, to show Shaltoni had no restrictions on his travel to Jordan before she could travel there with the children.

¶ 22    Confusingly, Shaltoni's argument on appeal centers on section 609.2(g) of the Act (750 ILCS 5/609.2) (West 2024), which he contends requires Illinois courts to fashion "appropriate safeguards" before permitting a custodial parent to travel internationally with their children. Unfortunately for Shaltoni, this section simply does not support the proposition. Instead, the section only deals with relocation, not international travel, and does not contain the phrase "appropriate safeguards." 750 ILCS 5/609.2 (West 2024). Without any specific statutory basis, Shaltoni's argument can only be understood as a general contention that the circuit court erred by finding it was not in his children's best interest to increase the travel bond in light of Musa's desire to relocate to Jordan, and the case pending there against Shaltoni.

¶ 23    We find that the circuit court's refusal to modify the Plan by increasing the travel bond to $50,000 or force Musa to immediately drop the Jordanian case was not against the manifest weight of the evidence. Shaltoni has not met his burden to demonstrate by a preponderance of the evidence that Musa's relocation motion and the Jordanian case against him  represented such substantial changes in circumstances that modification of the Plan was necessary to serve his children's best interests. See *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 31.

¶ 24    The record is clear that the court specifically considered the proffered changes in conditions Shaltoni cites, but did not conclude that they outweighed the benefits to the children of the initial arrangement, with the increased bond to $3500, such that additional modification was appropriate. This was a reasonable conclusion, given the evidence on both sides. There is no doubt that Musa's attempt to relocate to Jordan with the children is a relevant consideration. This fact, along with the travel complications Shaltoni experienced as a result of the Jordanian case and Jordan's status as a non-signatory to the Hague Convention, constitute reasonable bases for concern regarding international travel. But the record also shows that Musa had traveled to Jordan with the children and returned without incident on multiple occasions. Additionally, Shaltoni provides no indication that Musa had a history of disobeying court orders or would be likely to disobey such orders in the future. Given these facts, the record could reasonably support a decision for either party. Accordingly, Shaltoni's argument on this appeal constitutes a request that this court substitute its judgment for that of the circuit court and reweigh the evidence in his favor, something our standard of review does not permit. See *Best*, 223 Ill. 2d at 350-51.

¶ 25    Shaltoni's citation to *In re Marriage of Saheb and Khazal*, 377 Ill. App. 3d 615 (2007), fails for the same reason as his invocation of section 609.2 of the Act (750 ILCS 5/609.2 (West 2024)). As relevant here, *Saheb* mentions that the circuit court in that case ordered a $100,000 travel bond

because one spouse sought visitation with the couple's children in the United Arab Emirates, a country that is also a non-signatory to the Hague Convention. *Saheb*, 377 Ill. App. 3d at 621. The court then analyzed whether visitation in, or removal from, a non-Hague country complied with 750 ILCS 5/607 (visitation) (West 2006) and 750 ILCS 5/609 (removal) (West 2006). *Id.* at 621-26. The problems with Shaltoni's citation to *Saheb* are that (1) his case does not involve visitation or removal, and (2) both statutory sections discussed in *Saheb* were repealed well before the issues in the present case arose. Shaltoni does not address either issue or explain Saheb's continued relevance; accordingly, we reject his argument based on that decision. See Ill. S. Ct. R 341(h)(7) (eff. Oct. 1, 2020).

¶ 26    Shaltoni also contends the circuit court failed to consider the new circumstances at issue in its September 12, 2025 order, specifically that his initial consent predated Musa's motion to relocate. This argument is belied by the record, which demonstrates the court considered Musa's relocation desire as reflected in its decision to add additional travel strictures in its June 12, 2025 order denying the relocation motion.

¶ 27    Shaltoni's second claim on appeal is that the circuit court's decision to modify the Plan to grant him additional electronic communication with his children was counter to their best interest because the order only provided free contact on its face, while in practice Musa would likely limit the children's willingness to freely communicate with him because the children "remain fearful" of doing so. The record shows that the court granted Shaltoni's motion to modify the Plan to increase his electronic communication with the children by requiring Musa to permit free telephonic communication and by scheduling an unsupervised weekly Facetime on Saturdays.

¶ 28    We find that the circuit court's modification of the Plan on this issue was not against the manifest weight of the evidence. The court granted the relief Shaltoni requested, and in doing so

apparently credited his version of events over Musa's, as evidenced by the court's instructions to Musa in the September 12, 2025 order not to interfere with the children's ability to generally communicate electronically with Shaltoni. Shaltoni does not point to any evidence to support that Musa will disobey the court's order going forward beyond his own pure speculation that she is likely to do so. Speculation is an improper basis for a court to use when making a fact-based determination, as its use is grounds for reversal on a manifest weight of the evidence review. See *Burmood v. Anderson*, 2023 IL App (2d) 230092, ¶¶ 36-38. Just as it would have been improper for the circuit court to rely on Shaltoni's speculation of Musa's potential to disobey its order moving forward in fashioning its modification, it is improper for this court on appeal to reverse the circuit court's order without any substantive basis in the record to support such a decision.

¶ 29   In closing, we note that Shaltoni cites two bystander reports in his brief, one purporting to be from September 8, 2022, and the other from September 12, 2025. The record is clear that the circuit court never certified these reports, and thus they are not properly included in the record on appeal. See Ill. S. Ct. R. 323(c) (eff. July 1, 2017).

¶ 30                                    CONCLUSION

¶ 31   The circuit court's decisions were not against the manifest weight of the evidence, and we affirm accordingly.

¶ 32   Affirmed.