■ In the Matter of KARL MEIER, Respondent-Appellant, v NANCY KEY-MEIER, Appellant-Respondent. (And Another Related Proceeding.) [828 NYS2d 610]—

---

* The schedule change resulted in a net loss of two hours of visitation per week.

Carpinello, J. Cross appeals from an order of the Family Court of Delaware County (Becker, J.), entered April 6, 2005, which, inter alia, granted petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

In November 2002, respondent (hereinafter the mother) obtained sole custody of the parties' two daughters (born in 1993 and 1995) and petitioner (hereinafter the father) was granted biweekly weekend visitation. By all accounts, the father has always been very involved in the girls' lives, "spent liberal time" with them and even served as their Girl Scout leader. In January 2004, the mother petitioned to relocate with the children to Montana. The father countered with a petition for custody. When the mother withdrew her petition in late June 2004, the father withdrew his as well.

Within days thereafter, however, the mother took the girls on an extended vacation to Montana without first notifying the father. After he was unable to contact the girls for their scheduled visitation, he received a letter from the mother advising him about this vacation, which ultimately lasted until the end of July. In this letter, the mother informed the father that, in return for her "short notice" of this vacation, she would give him "the same amount of time to spend with [the] girls on their return." Thus, upon their return, the girls spent the entire month of August with their father. During this time period, the mother continued to discuss her desire to relocate to Montana. According to the father, however, he never consented.

On September 2, 2004, the father dropped off the girls for their first day of school. They attended school for that day only, however, because the mother relocated with them to Montana without the father's knowledge or consent. The very day the father learned of the girls' departure (from a school official), he commenced these separate proceedings for contempt and modification of custody. At the hearing that ensued, the parties disagreed on one critical fact, namely, whether the father had

consented to this move. Family Court found in the father's favor on this disputed point and granted both applications. In addition to awarding the father sole custody, the court ordered the mother to pay the father $1,000 for willfully violating the prior order. Both parties now appeal.

The mother contends that there was no willful violation of the prior court order because the father consented to her relocation and that, in any event, any such violation did not justify a modification of custody. We are unpersuaded. With respect to the critical factual dispute concerning whether the father consented to the mother's relocation to Montana, the record amply supports Family Court's credibility determination (*see e.g. Matter of Musgrove v Bloom*, 19 AD3d 819, 820 [2005]). This being the case, the evidence clearly established that the mother willfully violated the prior custody order when she moved to Montana with the girls without the father's knowledge or consent. Therefore, we uphold the finding of contempt (*see Matter of Daniels v Guntert*, 256 AD2d 940, 942 [1998]).

With respect to Family Court's decision to modify custody, we find that this decision has a sound and substantial basis in the record promoting the children's best interests (*see e.g. Matter of Bessette v Pelton*, 29 AD3d 1085, 1087-1088 [2006]). "Established law dictates that where there is a willful interference with a noncustodial parent's right to visitation, it is deemed to be so inconsistent with the best interests of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as [a] custodial parent" (*Matter of Ahmad v Naviwala*, 306 AD2d 588, 591 [2003], *lv dismissed* 100 NY2d 615 [2003] [internal quotation marks and citations omitted]; *accord Labanowski v Labanowski*, 4 AD3d 690, 694-695 [2004]; *Matter of Glenn v Glenn*, 262 AD2d 885, 887 [1999], *lv dismissed and denied* 94 NY2d 782 [1999]). Here, the mother's willful interference with the father's visitation rights reflected poorly on her fitness as a custodial parent and revealed her disregard of the importance of the girls' relationship with him (*see Matter of Willis-Marsh v Wilkerson*, 22 AD3d 977, 979 [2005]).

In its decision to modify custody, Family Court also conducted a *Tropea* analysis (*Matter of Tropea v Tropea*, 87 NY2d 727 [1996]). Upon consideration of the *Tropea* factors, the court found that there was no need—employment, economic, scholastic or otherwise—for the mother to relocate to Montana, particularly given the girls' close relationship with their father and presence of extended family on both sides here in New York (*compare Matter of Buell v Buell*, 258 AD2d 709 [1999]). The record amply supports its determination of the relocation issue

as well (*see e.g. Matter of Glaser v McFadden*, 287 AD2d 902 [2001]). In sum, the record before us fully supports the change in custody from the mother to the father.

Next, since Family Court found that the mother willfully violated the prior court order (*compare Webber v Webber*, 30 AD3d 723, 724-725 [2006]), the father persuasively argues that he was entitled to counsel fees in prosecuting the contempt and modification petitions (*see* Judiciary Law § 773; *Matter of Ahmad v Naviwala*, 14 AD3d 819, 821 [2005], *lv dismissed* 5 NY3d 783 [2005]; *Matter of Daniels v Guntert, supra* at 942).* The father's counsel particularized the charges incurred to prosecute the petitions, both of which flowed directly from the mother's contemptuous conduct (*see Matter of Ahmad v Naviwala*, 14 AD3d 819, 821 [2005], *supra*; *Matter of Lembo v Mayendia-Valdes*, 293 AD2d 789, 790-791 [2002]), and the mother never challenged the reasonableness of this sum (*see Matter of Daniels v Guntert, supra*). Family Court, however, failed to articulate its rationale for denying the fee in its entirety, although seemingly ordering a portion of it to be paid as a matter of discretion (*see* n, *supra*). As in *Matter of Daniels v Guntert* (*supra*), we will decide this issue since the record is complete. Upon our review of the affidavit of the father's attorney, in conjunction with a review of the record as a whole, we conclude that $5,000 is a fair and reasonable fee for his legal services. Thus, having previously been ordered to pay $1,000, the mother is ordered to pay an additional $4,000 to the father's attorney within 180 days of the date of this decision.

Cardona, P.J., Peters, Rose and Kane, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as denied petitioner's motion for counsel fees; motion granted and respondent is directed to pay petitioner's counsel $4,000 within 180 days of this Court's decision; and, as so modified, affirmed.

---

* Without explanation or analysis, Family Court ruled that "[w]ith regard to [the father's] request for an award of legal fees that were expended in prosecuting the contempt petition, the court denies counsel fees." However, the court went on to order the mother to pay $1,000 to the father in light of her willful violation of the prior custody order, presumably for his counsel fees, which totaled over $10,000.