McCarthy, J.
Appeals (1) from an order of the Surrogate’s Court of Albany County (Doyle, S.), entered September 27, 2011, which granted petitioner’s motion to, among other things, hold Daniel A. Ehring in civil contempt, and (2) from an order of said court, entered December 2, 2011, which directed Ehring to pay legal fees and costs.
Daniel A. Ehring served as executor of decedent’s estate until he was removed by Surrogate’s Court in 2002. In March 2005, the court found that Ehring was negligent and breached his fiduciary duty to the estate, causing damages in the amount of $357,878.95. A transcript of the judgment was filed by petitioner in the Albany County Clerk’s office.
In an effort to enforce the judgment, petitioner served Ehring with a subpoena directing him to appear at a deposition and produce certain financial documents, including bank records and tax returns, from 2005 through 2010. Ehring appeared at the deposition but did not bring any bank records and brought only redacted copies of his 2008 and 2009 federal tax returns. He testified that he was unsure of the location of his tax returns for previous years. He also testified that he did not have any personal bank accounts or mutual fund accounts and had only one business checking account entitled “Law Office of Daniel Ehring.” Ehring refused to produce canceled checks from the account because he believed that it would violate a disciplinary rule regarding client confidentiality.
Based upon Ehring’s failure to testify truthfully and produce the subpoenaed documents, petitioner moved for a finding of civil contempt, an order that Ehring produce the documents and the payment of a fine to the estate. Surrogate’s Court found Ehring in civil contempt and ordered him to produce, among other things, copies of all canceled checks from any bank ac *1052 count under his control and unredacted state and federal tax returns.[1] The court also directed him to pay a fine of $344 per week from September 9, 2010 until the date of the order, September 27, 2011, as well as the estate’s legal fees and costs associated with the contempt motion. In a subsequent order, the court set the amount of those fees and costs at $2,987.50. Ehring appeals from both orders.
Surrogate’s Court did not err in holding Ehring in civil contempt. “To sustain a civil contempt, a lawful judicial order expressing an unequivocal mandate must have been in effect and disobeyed,” “the party to be held in contempt must have had knowledge of the order,” and the rights of a party must have been prejudiced (McCain v Dinkins, 84 NY2d 216, 226 [1994]; see Judiciary Law § 753 [A]; Levy v Morgan, 92 AD3d 1118, 1121 [2012]). The subpoena unequivocally demanded production of certain documents that Ehring did not produce. Ehring had knowledge of the subpoena, as evidenced by his appearance at the deposition and his testimony concerning the demanded documents. The estate’s counsel averred that the estate’s ability to collect on its judgment was impaired and impeded by Ehring’s failure to testify truthfully about his assets and produce the financial documents listed in the subpoena.
Ehring argues that he did not disobey the subpoena because he testified truthfully, and that the subpoena was not a lawful order. Surrogate’s Court found incredible Ehring’s testimony that he was unsure of the location of his own tax returns, considering that Ehring is an attorney who also prepares tax returns for others as part of his business. Ehring also testified, rather unbelievably, that he could not recall the names of his three biggest clients from the past year or the name of a single case in active litigation in which he was counsel of record, despite testifying that he was a litigator.[2] The court reasonably concluded that Ehring’s testimony was not truthful, but was intended to evade collection of the judgment. Even if all of his testimony were truthful—and we are not in any way suggesting that it was—Ehring still disobeyed the subpoena by failing to produce the demanded documents. He redacted his 2008 and *1053 2009 federal tax returns,[3] stated that he could not locate the returns from 2005 through 2007, and did not produce or even mention any of his state tax returns. He did not produce any bank account documents, despite his testimony that he had a business checking account. In his opposition to the contempt motion, he—for the first time—produced a partial page of a bank account statement showing a commercial account with a slightly different name than the one he testified to, but he still did not produce the records of that account and the partial page did not include the bank account number.[4]
Ehring never challenged the subpoena by moving to quash or modify it (see CPLR 2304). Although Ehring asserted that he had a legitimate reason for not providing the bank records, namely the possible violation of client confidentiality (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.6), he never provided redacted records as he offered to do, nor did he support his assertion that the records contained confidential information. The identity of an attorney’s clients is generally not privileged information, nor are fee arrangements as they are not directly relevant to the subject matter of representation or to legal advice that may be given (see Matter of Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 NY3d 665, 679 [2005]; Hoopes v Carota, 74 NY2d 716, 717 [1989]; Matter of Priest v Hennessy, 51 NY2d 62, 69 [1980]; Oppenheimer v Oscar Shoes, 111 AD2d 28, 29 [1985]). Thus, Surrogate’s Court did not abuse its discretion by holding Ehring in civil contempt (see Judiciary Law § 753 [A] [3]; CPLR 5251; Matter of Aurelia v Aurelia, 56 AD3d 963, 964 [2008]).
The amount of the fine imposed was supported by the record. Petitioner asserted that the unredacted portion of Ehring’s 2009 income tax return showed that he had a gross income from his law office of $179,118. Although Ehring contends that his net income was only $22,305.62 that year, CPLR 5231 permits a judgment creditor to garnish 10% of a judgment debtor’s gross income. Based on Ehring’s tax return, petitioner demonstrated that if Ehring had produced the demanded information about his business bank account, then petitioner could have been able *1054 to garnish 10% of his weekly gross income of $3,442.30, or $344 per week, from that account. Judiciary Law § 773 provides that if an actual loss or injury has been caused by the punished misconduct, the amount of the fine for civil contempt should be “sufficient to indemnify the aggrieved party.” The fine imposed by Surrogate’s Court complies with this statute.
Surrogate’s Court properly required Ehring to pay the legal fees associated with the contempt motion. Counsel fees and costs that are attributable to the contemptuous conduct are recoverable (see Bell v White, 77 AD3d 1241, 1244 [2010], lv dismissed 16 NY3d 888 [2011]; Jamie v Jamie, 19 AD3d 330, 330-331 [2005]; see also Judiciary Law § 773). Petitioner submitted an affidavit from counsel detailing his fees and costs directly associated with Ehring’s contemptuous conduct and Ehring never challenged the reasonableness of the amount of fees requested (see Matter of Meier v Key-Meier, 36 AD3d 1001, 1004 [2007]). As there was no factual dispute and the matter could be resolved on the papers alone, the court was not required to hold a hearing to determine the amount of counsel fees and costs (see Matter of Lembo v Mayendia-Valdes, 293 AD2d 789, 790-791 [2002]; Bowie v Bowie, 182 AD2d 1049, 1050 [1992]).
Ehring’s argument about recusal is not properly before us because it was raised for the first time in his reply brief (see Giblin v Pine Ridge Log Homes, Inc., 42 AD3d 705, 706 [2007]). Similarly, we will not consider his request that we vacate the March 2005 order because that order is not on appeal; he apparently filed a notice of appeal from that order but never perfected it (see Estate of Claydon v Ehring, 65 AD3d 723, 723 [2009]; see also Matter of Steele, 85 AD3d 1375, 1376 [2011]).
Mercure, J.P., Spain and Egan Jr., JJ., concur. Ordered that the orders are affirmed, with costs.

. The record does not disclose whether Ehring complied with the portion of the order requiring him to produce documents. He does not address that portion of the order on appeal.

. If Ehring was counsel of record to a case in active litigation, his relationship to a client was already public knowledge. Thus, he would have no legitimate objection that such question would disclose confidential information about clients.

. Ehring did not include the redacted tax returns in the record, so we cannot determine whether any of the redactions were proper.

. Ehring correctly notes that while the restraining notice to the bank listed the business name that Ehring testified to, the information subpoena served on the bank asked whether the bank had any accounts in Ehring’s name individually. Despite petitioner’s error in this regard, Ehring did not testify to the exact name of the bank account and never provided an account number. With that information that Ehring withheld, petitioner could have issued an effective restraining notice.