Matter of Anwar RR. v Robin RR. (2021 NY Slip Op 04166)





Matter of Anwar RR. v Robin RR.


2021 NY Slip Op 04166


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

529410
[*1]In the Matter of Anwar RR., Petitioner,
v
Robin RR., Appellant. (And Two Other Related Proceedings.)

Calendar Date:May 25, 2021

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ.

Kathryn Friedman, Buffalo, for appellant.
Joan E. Mencel, Endwell, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered June 3, 2019, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two children (born in 2004 and 2006). In 2008, after the mother and the father separated, Family Court (Connerton, J.) issued an order, upon the father's default, that granted the mother sole legal and primary physical custody of the children, with the father receiving such parenting time as the parties could agree. However, shortly thereafter, the mother and the father reconciled and lived together through 2012, at which point they separated once more, only to reconcile and live together again for another two to three years, until 2017. In 2018, after the mother and the father separated and the mother relocated to Maryland with the children, the father commenced two of the instant custody modification proceedings seeking sole legal and primary physical custody of the children.[FN1] In March 2019, the mother commenced the third of these custody modification proceedings seeking permission to relocate to Maryland with the children.[FN2] Following a fact-finding hearing and a Lincoln hearing with the younger child,[FN3] Family Court (Pines, J.) granted the father sole legal and primary physical custody of the children,[FN4] with the mother receiving "reasonable" parenting time "as the parties [could] agree" and independent access to the medical, dental and educational records of the children. The mother appeals, solely arguing that Family Court's determination is not supported by a sound and substantial basis in the record.
A custodial parent's relocation provides the change in circumstances that is ordinarily required to modify an existing custody order (see Matter of James TT. v Shermaqiae UU., 184 AD3d 975, 976 [2020]; Matter of Perestam v Perestam, 141 AD3d 757, 757-758 [2016]; Matter of Barner v Hampton, 132 AD3d 1098, 1099 [2015]). The parent seeking permission to relocate with the children bears the burden of proving, by a preponderance of the evidence, that such relocation is in the children's best interests (see Tropea v Tropea, 87 NY2d 727, 741 [1996]; Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [2019]; Matter of Sofranko v Stefan, 80 AD3d 814, 815 [2011]). In determining whether the children's best interests are served by relocating with the custodial parent, courts must consider, among other factors, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and [the] child[ren's] li[ves] may be enhanced economically, emotionally and educationally [*2]by the move, and the feasibility of preserving the relationship between the noncustodial parent and [the] child[ren] through suitable [parenting time] arrangements" (Tropea v Tropea, 87 NY2d at 740-741; accord Matter of Latoya B. v Marvin D., 191 AD3d 1123, 187 [2021]). "This Court accords deference to Family Court's credibility assessments and findings of fact, and [we] will not disturb a relocation determination if we find it to be supported by a sound and substantial basis in the record" (Matter of Michael BB. v Kristen CC., 173 AD3d at 1311 [citation omitted]; see Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [2018], lv denied 31 NY3d 909 [2018]).
The record evidence established that, following entry of the 2008 custody order, the mother and the father lived together with the children as an intact family on and off for at least five years, during which the father was actively involved in the children's day-to-day lives. The mother and the father each testified that their separation in 2012 resulted from an incident of domestic violence perpetrated by the father against the mother. Their testimony further demonstrated that, during their periods of separation, the mother was the children's primary custodian and that the father regularly exercised parenting time with the children and otherwise remained involved in the children's lives. The mother testified that, after she and the father separated for the final time, she became romantically involved with a man who lives in Baltimore, Maryland and that she ultimately became pregnant with their child. The record established that the mother's romantic relationship and pregnancy was the driving force behind the mother's decision to relocate to Maryland. It was clear from the evidence that the mother's relocation to Maryland, more than 250 miles from the father's residence, had and would continue to have an adverse impact on the quantity and quality of the father's relationships with the children.
There was little evidence that the children's lives were or would be enhanced economically, emotionally or educationally by the relocation to Maryland. With respect to the economic impact of the relocation, the mother testified that the move had enabled her to secure a promotion within the same company that she had worked for in New York and that such promotion offered the potential for an increase in pay through commissions, as well as increased flexibility and other perks, such as a company phone and reimbursement for travel expenses. However, the salary difference was nominal and, in the months since the mother's move, she had only earned a modest commission. Additionally, although the mother generally testified that she had fewer expenses in Maryland, which she attributed to her and her paramour sharing household bills, there was no evidence as to the difference between her expenses in New York and those in Maryland. As for the children's educational lives, the evidence demonstrated that [*3]the children were struggling in school in Maryland and that they were doing just as poorly, if not worse, than they had been doing in New York. The mother did not present any evidence as to any difference in the quality of education available to the children in Maryland as compared to New York (see Matter of Julie E. v David E., 124 AD3d 934, 936 [2015]).
Regarding the children's emotional well-being, the evidence established that there had been an incident of domestic violence between the children and the paramour and that the children's respective relationships with the paramour were strained as a result. In fact, the mother and one of the children's half siblings,[FN5] who had also moved to Maryland, separately described the children's relationships with the paramour as merely being "cordial." Further, the children's desire to return to New York was openly acknowledged by both the mother and the father during their testimony, with the mother stating that the older child wished to return to New York to be with his friends. Moreover, the children's preferences to return to New York were made plain on the record by the attorney for the children. Given the children's ages at the time of the hearing, their preferences are entitled to considerable weight (see Matter of Barner v Hampton, 132 AD3d at 1100).
Overall, the evidence established that both parents love and enjoy close relationships with the children. Upon consideration of all of the evidence, including the children's express preferences, we find that a sound and substantial basis exists in the record to support Family Court's conclusion that relocating to Maryland with the mother was not in the children's best interests and that their interests were best served by an award of sole legal and primary physical custody to the father and parenting time to the mother (see Matter of Southammavong v Sisen, 141 AD3d 905, 906-907 [2016]; Matter of Cook-Lynch v Valk, 126 AD3d 1062, 1064 [2015]; Matter of Gates v Petosa, 125 AD3d 1161, 1162-1163 [2015]). Accordingly, we will not disturb Family Court's order.
Garry, P.J., Egan Jr., Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father had previously filed a custody modification petition alleging that the mother wanted to move out of state with the children. Perplexingly, that petition was dismissed as seeking relief based upon anticipatory circumstances.

Footnote 2: The mother filed a custody modification petition in October 2018, but that petition was ultimately dismissed for failing to include the signature of the mother's attorney.

Footnote 3: The older child declined to participate in a Lincoln hearing.

Footnote 4: Family Court directed that the father's sole legal and primary physical custody was to begin on "the Saturday immediately following the last day of the 2018-2019 school year."

Footnote 5: In addition to the baby born of the mother's relationship with the paramour, the mother has two adult daughters from a relationship that predates her marriage to the father.