Matter of Chad V. v Kristen V. (2025 NY Slip Op 06946)

Matter of Chad V. v Kristen V.

2025 NY Slip Op 06946

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-24-1649
[*1]In the Matter of Chad V., Respondent,
vKristen ., Appellant.

Calendar Date:October 15, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Peter C. Lomtevas, Esq., PC, Schenectady (Peter C. Lomtevas of counsel), for appellant.
Alexandra G. Verrigni, Rexford, for respondent.
Nicole R. Rodgers, Saratoga Springs, attorney for the child.

Pritzker, J.P.
Appeal from an order of the Family Court of Washington County (Kelcie Racino, Referee), entered August 22, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2015). The parties separated in 2019, at which time the mother vacated the marital residence and moved into an apartment 1,000 feet away. In 2022, a judgment of divorce was entered between the mother and the father. Pursuant to a custody agreement that was incorporated but not merged in the judgment of divorce, the parties shared joint legal custody of the child, while the mother was granted primary physical custody and the father received parenting time as the parties mutually agreed. During this time, due in large part to the proximity of their residences, the father enjoyed frequent and regular parenting time. In May 2023, the mother met her now-husband (hereinafter the stepfather) online, who resides in Illinois. Thereafter, in November 2023, over the objections of the father, the mother traveled with the child to visit the stepfather in Chicago, Illinois for Thanksgiving. During her visit, the mother married the stepfather in Illinois and subsequently informed the father that she would be enrolling the child in school and permanently residing in Illinois.
In December 2023, the father commenced this modification proceeding seeking sole custody of the child or, if the child is not returned to New York, parenting time every holiday and summer, citing the child's removal from the state as the requisite change in circumstances. After fact-finding and Lincoln hearings, Family Court found that the mother's unilateral decision to move to Illinois demonstrated a change in circumstances and ultimately determined that it would be in the best interests of the child to award primary physical custody to the father while the parties retained joint legal custody. Thereafter, Family Court crafted a parenting schedule that provided for the mother to have parenting time during summer recess and every other holiday in addition to parenting time as the parties can agree. The mother appeals.
The mother's argument that her move to Illinois with the child is not a sufficient change in circumstances is completely devoid of merit. To the contrary, a unilateral relocation such as this, "which significantly increased the visitation distance between [the father] and the child, is a sufficient change in circumstances" (Matter of Gregio v Rifenburg, 3 AD3d 830, 832 [3d Dept 2004]; see Matter of Hanson v Hanson, 283 AD2d 677, 678 [3d Dept 2001]).[FN1] As such, Family Court was tasked with determining whether it was in the child's best interests to remain in the mother's custody in Illinois.
To that end, Family Court's decision that it was in the best interests of the child to modify custody and award the parties joint [*2]legal custody and the father primary physical custody is supported by a sound and substantial basis in the record. In determining what custodial arrangement would serve the child's bests interests, the court "must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Brooke PP. v Joshua QQ., 240 AD3d 1047, 1048-1049 [3d Dept 2025] [internal quotation marks and citations omitted]). Additionally, as relevant here, "[e]stablished law dictates that where there is a willful interference with a noncustodial parent's right to visitation, it is deemed to be so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that the offending party is unfit to act as a custodial parent" (Matter of Ahmad v Naviwala, 306 AD2d 588, 591 [3d Dept 2003] [internal quotation marks, brackets and citations omitted], lv dismissed 100 NY2d 615 [2003]; see Matter of Meier v Key-Meier, 36 AD3d 1001, 1003 [3d Dept 2007]).
At the fact-finding hearing, the mother and the father each testified that they initially coparented very well together and demonstrated that they were both fit and loving parents who maintain a stable home environment and provide for the child's overall well-being. However, although the mother testified that the father was aware of the mother's plan to relocate with the child to Illinois, a review of the record does not support such an assertion as text messages between the father and the mother reveal that he was hesitant, if not entirely dismissive, of the mother's request to bring the child to Chicago for the holidays. This corroborates the father's testimony that he never approved of the mother's plan to permanently relocate with the child to Illinois. Although the father testified that he was aware the mother desired to move to Illinois and acknowledged that they had discussed her moving on several occasions, the father also testified that he was adamant that he did not approve of the child relocating with the mother. Moreover, the mother acknowledged that the father had no indication that she and the child were moving to Illinois in November 2023 by the luggage they packed. The father also testified that he only learned that the mother married the stepfather after the fact from his stepdaughter's father. Notably, his modification petition was filed only weeks later.
Additionally, testimony at the fact-finding hearing demonstrated that, despite the mother and the father having joint legal custody, the mother unilaterally decided to discontinue giving the child his prescribed ADHD medicine. It appears from the mother's testimony and arguments on appeal that her biggest [*3]objection to the father having primary physical custody is because his residence is typically undergoing self-improvement projects. Contrary to the mother's assertion, the record does not support her argument that the father's house is unsuitable to live in as no further evidence was submitted to support this claim and the father refuted such assertions. Testimony also revealed that, prior to leaving New York, the child had been in the same school district his entire life. However, since relocating with the mother, he had switched schools more than once, as the mother initially relocated to Chicago, but then relocated again to a suburb, a move that necessitated another change in schools for the child. There was also testimony that the father's family all live in close proximity to the father, whereas the mother had no family, other than the stepfather and his family, in Illinois.
Given the foregoing, "[a]lthough the mother enjoyed primary physical custody up until the time she relocated to [Illinois], the father consistently exercised his [parenting time], and it is clear from the record that the proposed relocation would be highly detrimental to the father's existing relationship with the child — particularly in light of the distance involved" (Matter of Batchelder v BonHotel, 106 AD3d 1395, 1397 [3d Dept 2013]; see Matter of Megan UU. v Phillip UU., 193 AD3d 1287, 1289 [3d Dept 2021]). The record further supports that the mother would not be suited to be the primary physical custodian given, among other things, her unilateral decision to relocate the child, enroll him in two different schools and discontinue his ADHD medication, all without consulting the father (see Matter of Keefe v Adam, 85 AD3d 1225, 1226-1227 [3d Dept 2011]; Matter of Meier v Key-Meier, 36 AD3d at 1003).
Family Court also determined that the mother did not meet her heavy burden under Tropea of proving that relocation was in the child's best interests (see Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1144 [3d Dept 2024]). Although the parties agree that relocating to Chicago would enhance the child's educational and cultural experiences, the mother has since moved to the suburbs of Chicago and there was no testimony provided at trial regarding the child's new school and environment. By remaining in New York with the father, the child continues to retain the same pediatrician, friends, school, extra-curricular activities and is supported by family. "In view of the foregoing, and giving the requisite deference to Family Court's assessment of the witnesses' credibility," the court's determination that it was in the child's best interests to award primary physical custody to the father has a sound and substantial basis in the record (Matter of Jahari BB. v Zada CC., 232 AD3d at 1146; see Matter of Britney A. v Jonathan A., 238 AD3d 1447, 1450 [3d Dept 2025]; Matter of Anwar RR. v Robin RR., 196 AD3d 756, 759 [3d Dept 2021[*4]]; Matter of Daniel G. v Marie H., 196 AD3d 801, 810 [3d Dept 2021]). We have reviewed the mother's remaining contentions and find them lacking in merit.
Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Under the facts of this case, the argument by the mother and the attorney for the child that the mother, as the primary physical custodian, did not need to seek permission prior to relocating is anathema to the best interests of the child and is contrary to the well-settled precepts of family law.